### William F. Kruger, Appellee, v. M. C. McCaughey et al., Appellants.

1. PHYSICIANS AND SURGEONS—*degree of care required of.* Persons practicing as physicians and surgeons are required to possess ordinary skill in their profession, and to practice their profession with ordinary skill. Ordinary skill, as applied to physicians and surgeons, is that degree of skill which is ordinarily possessed by physicians and surgeons in practice.

2. PHYSICIANS AND SURGEONS—*when not liable for negligence.* A physician who gives his patient the benefit of his best judgment is not liable for negligence, even if his judgment is erroneous, unless the error is such as to be inconsistent with ordinary skill.

Action on the case. Appeal from the Circuit Court of Vermilion county; the Hon. JAMES W. CRAIG, Judge, presiding. Heard in this court at the November term, 1908. Reversed and remanded. Opinion filed May 19, 1909.

L. T. ALLEN and J. B. MANN, for appellants.

DWYER & DWYER, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is a suit by appellee against appellants to recover damages alleged to have been sustained by reason of the failure of appellants to use reasonable skill and care as physicians and surgeons in reducing certain fractures of the bones in appellee's arm and in the subsequent treatment of such fractures. Upon the trial of the cause there was a verdict and judgment against appellants for $200.

On June 12, 1905, appellee, who was then employed in a grain elevator at Hoopeston, had his right arm caught between a sprocket wheel and the belt chain, whereby he sustained an oblique fracture of the humerus at about the junction of the lower and middle third and compound comminuted oblique fractures of the ulna and radius on the same level at the lower third, where also the sprockets caused three wounds reaching to the bone and a laceration of the flexor muscles, nerves and interosseous ligament. In the wounds in the fore-arm there was also considerable dirt and grease. Appellants were called to attend the appellee in the office of the elevator immediately after the accident and after binding the injured arm to a board, appellee was removed to his home.

There is no controversy in the evidence as to the methods prescribed and adopted by appellants in the subsequent treatment of the case. About an hour after the injury appellee was put to sleep and the wound was thoroughly disinfected, washed and cleaned, and pieces of bone removed from the fore-arm and the proper methods were employed in an effort to reduce the fractures and to place the bones in apposition. The wounds were sewed up, leaving an opening for drainage and padded wooden splints were applied and properly adjusted, extension and counter-extension being maintained until the arm was fully band-

aged. Appellee was put to bed and his arm was placed on a long splint. There was a slight increase in swelling on the first and second days following, and on the fourth day the splints were removed. The wounds which presented some indication of gangrene were washed and cleansed and an effort made by observation and palpation to determine whether the bones were in apposition and the splints and bandages were then reapplied. Later on the same day there were some evidences of suppuration of the wounds, accompanied by fever and medicine was administered to relieve pain. Upon the sixth day the dressings were removed, the wounds cleansed and after the splints, except the one which extended the entire length of the arm, were replaced, the arm was bent at a right angle and suspended by a sling across the breast and the sling attached to the clothing of appellee. On the eighth day the arm was again dressed and a felt shoulder cap splint was conformed to the shoulder and extended down nearly to the elbow, a wooden splint was placed on the under side of the arm and the upper arm was bound to the body by bandages running around the body and over the arm. The forearm was then still swollen and the wounds continued to present evidences of suppuration. Thereafter until August 26th appellee's arm was examined and dressed every second or third day and on August 28th appellee was discharged by appellants as cured, except in so far as he was directed and required to use his arm as much as possible to the end that its proper functions might be restored. Appellee testified that after his discharge by appellants he had considerable pain in his arm, and was unable to use it to any extent and unable to raise it except with the assistance of his other arm and hand. On September 16th, appellee consulted Dr. Brobeck, a local practitioner in Hoopeston, with reference to the condition of his arm, and Dr. Brobeck then examined the arm through a fluoroscope and made an X-ray skiagraph of the fractures. This skiagraph

introduced in evidence discloses an over-riding or over-lapping of the ends of the humerus in the upper arm, and of the ends of the radius and ulna in the fore-arm. When the skiagraph was taken appellee's arm was placed on the plate about on a level with the shoulder joint, midway between supination and prona-tion with the back of the hand up. Dr. Brobeck testified that a bony growth was then present between the ulna and radius which united those bones. About September 27, 1905, appellee, accompanied by Dr. Brobeck, went to Chicago for the purpose of consulting Dr. J. B. Murphy. At the direction of Dr. Murphy appellee went to Mercy Hospital, where he was put to sleep and the arm forcibly put through extension and extreme movements for the purpose of securing normal flection and rotation. Dr. Murphy testified that appellee then had a limited degree of supination and pronation, and that neither could exist if the ulna and radius were joined by a bony union. In October, 1905, appellee, accompanied by Dr. Brobeck, consulted Dr. Nicholas Senn, in Chicago, where Dr. Senn made an examina-tion of the arm. Dr. Senn testified that he was re-quested to operate on the arm, but did not do so; that although the rotation was not perfect it was not en-tirely abolished, and that fact tended to show that there was not a bony union between the ulna and radius. Being dissatisfied with the diagnosis and prog-nosis made by Dr. Senn, appellee and Dr. Brobeck then consulted Dr. A. J. Ochsner of Chicago. Upon the insistence of appellee and Dr. Brobeck, appellee went to the Augustana Hospital and was operated on by Dr. Ochsner. Dr. Ochsner testified that he made an incision over the seat of the fracture of the fore-arm in the shape of the capital letter "H," so as to lay bare the ends of the bones and then carried the incision deeper and found that the ends of the bones were slightly displaced and that scar tissue had formed between the radius and the ulna at the point of the fractures which interfered with the rotary mo-

tion of the arm; that he cut away this tissue and put in its place a matting of cat gut to keep the two bones separated and then closed the skin over all. The claim of appellee in this case is based upon certain alleged functional disorders of the lower arm, being lack of supination, pronation and rotation, and we do not understand from the evidence that the incapacity of appellee in those particulars is attributed to the condition of the upper arm.

The only witness who assumes to state that the arm of appellee was not treated by appellants in an ordinarily skillful manner is Dr. Brobeck, who was confessedly unfriendly to appellants. He testified that better results would have been attained if the wounds of the forearm had been bridged over with a piece of iron in the form of a half circle and fastened into a plaster of Paris cast above and below the wound. It is also in evidence that the ends of a fractured bone may be held in apposition by wiring with a silver wire. But the testimony of eminent surgeons called as witnesses on behalf of appellants is to the effect that neither of these methods of treatment would have been proper in this case because of the character of the injury and the presence of pus.

Persons practicing as physicians and surgeons are required to possess ordinary skill in their profession, and to practice their profession with ordinary skill. Ordinary skill, as applied to physicians and surgeons, is that degree of skill which is ordinarily possessed by physicians and surgeons in practice. Barnes v. Means, 82 Ill. 379; Holtzman v. Hoy, 118 Ill. 534.

A physician who gives his patient the benefit of his best judgment is not liable for negligence, even if his judgment is erroneous, unless the error is such as to be inconsistent with ordinary skill. Fisher v. Niccolls, 2 Ill. App. 484.

While sufficient foundation was laid to permit the X-ray skiagraph of appellee's arm to be introduced in evidence, such skiagraph is by no means conclusive

as to the conditions actually existing in the arm. The skiagraph is not a picture of the object or substance itself, but of the shadow merely which is cast by such object or substance, and the evidence discloses that the picture thus produced is frequently inaccurate and misleading, owing to divergence and distortion. It is easily within the ability of a person operating an X-ray machine to magnify or minimize the appearance of an existing condition.

A careful consideration of the evidence in this case compels us to the conclusion that the verdict of the jury is against the manifest weight of the evidence and should be set aside. David W. Graham, a surgeon of thirty-six years' experience, and whose time is largely devoted to work in hospitals and in consultation, testified that an oblique fracture surrounded by a large group of strong muscles, as in appellee's upper arm, as a rule, overlaps in spite of all efforts; that appellee's upper arm was in very good condition, very nearly normal, and that the treatment by appellants of appellee's arm was proper.

Dr. L. B. Russell, a physician and surgeon having twelve years' practice in Hoopeston, testified that he examined appellee's arm in the latter part of August, 1905, and that its external appearance was good.

Dr. John B. Murphy of Chicago, a surgeon of wide experience, testified that he examined appellee's arm and that its general conformation was very good; that in view of the character of the injury, the functional result following the treatment by appellants was good; that appellee's arm was then in a condition which permitted him to be discharged by his attending physician; that while he found that the edges of the bone could be felt in the arm where the fracture had been, that this was the rule in an enormous per cent of fractures at that point, and that an overlapping of the entire diameter of the bone was not present.

Dr. A. J. Ochsner, a surgeon of twenty-two years' experience, testified that the condition he found was

a good result in such a fracture, and that in the greater number of cases where there is an oblique fracture on the same level of the ulna and radius, there is an overlapping such as he observed in appellee's arm; that the treatment of the arm by appellants was proper and such as was ordinarily pursued by good practitioners in like cases.

Dr. H. W. Morehouse, a surgeon of thirty-eight years' experience, testified that the treatment of appellee's arm by appellants was the proper and ordinary treatment as recognized by the profession as a whole; that where there is a fracture of both bones of the fore-arm at or above the middle it is practically impossible to bring about a correct apposition and alignment of the broken fragments; that in such cases there is more or less overlapping, owing to the muscular contraction, and that the fact of there being a compound comminuted fracture and laceration of the muscles and soft parts covering the bones, would add infinitely to the difficulty of treatment.

Dr. Nicholas Senn, a surgeon of thirty years' experience, testified that a perfect reduction and retention of all the fragments where there was so much injury to the soft parts and so many fractures was not to be expected; that judging from the number of fractures, the existence of the wounds and the difficulties encountered in such cases, he considered the result in appellee's arm a fair one.

Dr. Stephen Glidden, a physician and surgeon of ten years' practice, about 80 per cent of which had been surgery, testified that the method of treatment employed by appellants was proper; that in cases of oblique fracture of the bones of the fore-arm it was almost impossible to keep the bones from lapping.

It is to be observed that the testimony of nearly all these witnesses was predicated not alone upon hypothesis, but as well upon their personal examination and observation of appellee's arm.

As against the testimony of these witnesses, to-

gether with the testimony of appellants, there stands only the testimony of Dr. Brobeck as to the impropriety of the treatment by appellants and the testimony of appellee as to the functional conditions during and subsequent to his treatment.

The judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*