HALLAM & BARNES

*v.*

HARRIET H. MEANS.

82 379
94a ¹153

1. PHYSICIANS AND SURGEONS—*degree of care and skill required.* While, perhaps, persons who hold themselves out to the public as physicians and surgeons, would not be required to possess the highest degree of skill which the most learned might acquire in the profession, yet they are bound to possess, and in their practice to exercise, that degree of skill which is ordinarily possessed by physicians in practice.

2. And where an injury results from a want of ordinary skill, or from a failure to exercise proper diligence and caution in the treatment of a case, the physician must be held responsible.

3. In this case a person had his leg broken. The fracture of the larger bone was oblique, and near the upper part of the lower third of the limb. The fracture of the smaller bone was nearly transverse, and was from two to three inches above the ankle joint. A surgeon was called within twenty minutes after the accident. In consequence of the want of care or skill on the part of the surgeon the broken leg was shortened three-fourths of an inch. A judgment against the surgeon for $1000 damages was affirmed.

4. It was held to have been the duty of the attending surgeon, according to the medical testimony adduced, to adjust the fracture and extend the limb

to its original length, and when this was accomplished and the bones placed in apposition, use those appliances in general use among surgeons which are best calculated and will hold the limb in proper position and at its original length.

5. However, if the character of the injury received be such that the patient could not endure extension and counter extension, then a failure to resort to those appliances would not show a want of skill, or negligence on the part of the surgeon.

APPEAL from the Circuit Court of Marion county; the Hon. AMOS WATTS, Judge, presiding.

Messrs. W. STOKER & SON, for the appellants.

Mr. B. B. SMITH, and Mr. M. SCHÆFFER, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action on the case, brought by Harriet H. Means, in the circuit court of Marion county, against appellants, to recover damages for the unskillful and negligent manner in which they, as physicians and surgeons, treated a broken leg of appellee.

The ground mainly relied upon by appellants to secure a reversal of the judgment is, that appellee failed to establish, by a preponderance of evidence, a want of skill or a want of ordinary or proper care on the part of appellants, either in adjusting the fracture or treating the broken limb.

The facts in this case have been passed upon by two juries, each of which returned a verdict in favor of appellee. The first trial resulted in a verdict of $500, which, on motion of appellants, the circuit court set aside and granted a new trial. Upon the second trial, the jury returned a verdict for $1000, upon which the court rendered judgment.

Where the facts in a case have been passed upon by two juries, each finding the same way, and then a reversal is asked on the ground that the evidence is not sufficient to sustain the verdict, it must be a case, in its facts, where the verdict is manifestly and clearly in conflict with the proof, to justify a reversal.

The law has intrusted the trial of issues of fact before a jury, and where a party has had the benefit of two trials in the mode prescribed by law, an appellate court ought not to interfere, except to prevent manifest injustice.

It is true, there is a clear conflict in the evidence as to the skill used by appellants in the treatment of the broken limb, but, upon a careful examination of the whole testimony, we think it apparent that the record discloses enough upon which to base the verdict of the jury.

The law required appellants, who held themselves out to the public as physicians and surgeons, to possess, and in their practice use, ordinary skill in their profession. While, perhaps, they would not be required to possess the highest degree of skill which the most learned might acquire in the profession, yet they were bound to have, and in their practice use, that degree of skill which is ordinarily possessed by physicians in practice. *Ritchey* v. *West*, 23 Ill. 385.

And where an injury results from a want of ordinary skill, or from a failure to exercise proper diligence and caution in the treatment of a case, the physician must be held responsible.

The question, then, is, whether appellants, in the treatment of appellee, used that skill which the law required, or whether there was evidence tending to establish a want of ordinary skill in the treatment.

It appears, from the testimony contained in the record, that, on the 19th day of January, 1872, appellee's leg was broken. The fracture of the larger bone was oblique, and near the upper part of the lower third of the limb. The fracture of the smaller bone was nearly transverse, and was from two to three inches above the ankle joint.

Immediately after the injury, and within twenty minutes after the leg was broken, appellants were called upon and undertook the treatment of the case.

Dr. Green, upon examination and measurement, found the broken leg three-quarters of an inch short. In his evidence before the jury, he said: "Shortening is caused by lapping of

bones; the upper fragment of the smaller bone has slipped past the lower fragment, and makes a prominence; that is the case with both bones; there is lapping of three-fourths of an inch, producing shortening."

This witness also testified: "The first duty of a surgeon is to adjust the fracture. I mean by that, extension or pulling out the same as the well bone. My practice is to set the bone anyhow. If I find the patient too nervous without, or there is too great rigidity of the muscles, I put him under the influence of chloroform, if he can not stand it without; and if the patient would not allow a proper adjustment of the fracture, I would abandon the case. The fragment can not be properly adjusted without extension and counter extension. Counter extension means holding it, and extension, extending it. It is done by pulling it out the proper length, and holding it there."

We have given this portion of Dr. Green's evidence as he gave it to the jury, for the reason that his testimony is directly in point, and he seems to be skilled in his profession.

According to the medical testimony before the jury, it was the duty of appellants, when they were employed as surgeons to treat the broken limb, to adjust the fracture and extend the limb to its original length, and when this was accomplished, and the bones placed in apposition, use those appliances in general use among surgeons which are best calculated to and will hold the limb in proper position, and at its original length.

Was this done by appellants?

When the fracture was adjusted, they do not pretend extension or counter extension was used. The excuse for not extending the limb, and using counter extension to hold it to its proper position, was on account of extreme tenderness and swelling. This excuse is, however, in conflict with the testimony of several witnesses who were present at the time.

Appellants were called upon to adjust the fracture, within twenty or thirty minutes after the bones were broken. While the limb may have become swollen immediately after the injury, yet it is unreasonable to suppose swelling would have occurred

so soon, or that degree of tenderness then existed that would manifest itself a few days after the accident.

Upon this point we are not, however, left to conjecture. It was proven by several witnesses who were present, that no swelling of the limb had occurred when the fracture was adjusted and placed in splints by one of appellants.

It is true, appellants claim that extension and counter extension were attempted some days after the fracture was adjusted, and the patient could not endure it, but it does not satisfactorily appear that the ankle joint was injured, or the fracture so near it as to interfere with proper treatment. But, independent of this, no good reason is shown why extension and counter extension were not used in the first instance.

The shortening of the limb, the prominence produced by the lapping of the bones, spoken of by Dr. Green, the inability of appellee to use her leg in walking without pain, the jury no doubt concluded, from the evidence, were to be attributed to the fact that the bones were not, at the proper time, placed in apposition, and the limb extended and held in position, as might have been done by the exercise of reasonable skill, which is required of a surgeon in the practice of his profession.

While we are willing to concede the evidence is somewhat conflicting, yet we are not prepared to say, upon consideration of all the testimony, the jury were not justified in arriving at the conclusion reached by the verdict.

It is also claimed by appellants that the third instruction given for appellee was improper, which was as follows:

"That if you believe, from the evidence, that, in the treatment of fractures of bones, regard should be had to the direction in which the break occurred; and if the jury believe, from the evidence, that the fracture of the bones of the plaintiff, which the defendants treated, required extension in order to secure the proper adjustment of the parts to each other, and that the defendants did not use any means to secure extension, but, by a want of skill, or by negligence, suffered the broken

fragment to be or become displaced, and that thereby the plaintiff has suffered and become permanently lame and disabled, as charged in the declaration, you should find defendants guilty."

It is suggested by appellants, "If inflammation, tenderness, complication of joint, and circulation, admitted of extension and counter extension, then it was appellants' duty to use it, and not otherwise."

While it is true appellants could not be held responsible on account of a failure to use extension and counter extension, if the condition of the patient and fracture were such that those appliances could not be resorted to or endured, yet we fail to perceive wherein the instruction could mislead the jury in that regard. If the character of the injury received was such that appellee could not endure extension and counter extension, then a failure to resort to those appliances would not show a want of skill, or negligence on the part of appellants.

The jury were expressly informed by the instruction that the injury of which appellee complains must have arisen from the want of skill or negligence of appellants in suffering the broken fragment to become displaced.

It is also urged that appellee's second, fourth and fifth instructions were argumentative, and calculated to mislead. We do not so regard them. They state the law involved substantially correct, and they contain nothing calculated to mislead the jury.

The appellants' twelfth instruction the court modified. In this we perceive no error. The instruction, as asked, announced the rule that, if appellants possessed ordinary skill, they could not be held liable, whether they used ordinary skill or not.

A surgeon, in order to relieve himself of responsibility, must not only possess, but, in the practice of the profession, must use ordinary skill.

As the record discloses no substantial error, the judgment will be affirmed.

*Judgment affirmed.*