## Charles W. McKee v. Cora M. Allen.

94   147
115  6168

1. MALPRACTICE—*Liability of Physicians.*—A physician who has given a patient the benefit of his best judgment, is not liable for negligence, even if his judgment is erroneous, unless the error is so gross as to be inconsistent with reasonable and ordinary skill and care.

2. SAME—*Duty of Physicians.*—It is the duty of physicians and surgeons to exercise reasonable and ordinary care, skill and diligence in the practice of their professions. To this extent they are liable and no further. They are not required to possess the highest, but reasonable skill only.

3. SAME—*Burden of Proof.*—The burden of proof is upon the plaintiff in an action for malpractice to show the want of such skill, care and diligence, and also to show that the injury complained of resulted from a failure to exercise these requisites.

4. SAME—*When the Want of Ordinary Care Can Not be Imputed to a Physician.*—It can not be said as a matter of law, where a physician recommends a method of treatment recognized and approved by the standard authorities upon medicine and surgery as appropriate to a case

# 148    APPELLATE COURTS OF ILLINOIS.

in hand, and consults another physician or surgeon who has had experience in the use of such method, who, after examination of the patient, concurs in his judgment, and the patient submits to the treatment upon such advice, that the physician has failed to exercise ordinary skill, care or diligence in making such recommendation, and if he has not so failed he is not liable.

5.    SAME—*Physicians and Surgeons Not Insurers.*—Physicians and surgeons are not insurers of successful result of a medical treatment or surgical operation.

6.    LIMITATIONS—*What is to be Regarded as the Commencement of a Suit.*—A suit for malpractice was begun in the Superior Court of Cook County on May 15, 1898. The summons was taken out but was not put into the hands of the sheriff, nor was the declaration filed until January 9th following. The surgical operation complained of was performed on December 15, 1896. An alias summons, which was the one served on the defendant, was not issued, nor was the declaration filed until after the bar of the statute of limitations had arisen; but on the authority of Schroeder v. The M. & M. Ins. Co., 104 Ill. 71, *held* that the suit was begun by the issuing of the first summons.

**Trespass on the Case,** for malpractice. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Reversed and remanded. Opinion filed March 12, 1901.

JAMES B. MUIR and MILLARD F. RIGGLE, attorneys for appellant.

CONSIDER H. WILLETT and LOUIS KARCHER, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This action was brought by appellee to recover for alleged malpractice. Appellant is a physician, and was called to treat appellee, who, it is said, was suffering from sciatic rheumatism. Appellant advised a surgical operation, to which, after one or two weeks of consideration, the disease getting no better and appellee suffering much pain, she consented. She was removed to the West Side hospital. The operation was there performed by an attending surgeon assisted by appellant. An incision was made in the left leg at a point where the large sciatic nerve is readily located; the nerve was pulled out of its sheath and vigorously stretched. It was then restored to its place and the

incision closed.   The knee, ankle and hip joints were then manipulated in order to break up what is termed an ankylosis or stiffness which existed in the joints, and to give them as much of the natural motion as possible.   In order to prevent the ligaments from again contracting, the limb was kept stretched by weights for some weeks.   The incision healed, and after remaining in the hospital seven weeks appellee was removed to her home, as she states against the advice of appellant.   She has never fully recovered from the disease, and the leg affected is, it is claimed, contracted, and shorter than the other.

The declaration charges that it was the duty of the appellant " to treat said limb with external applications and proper prescriptions, and that by reason of his failure so to do, and by reason of an "ignorant and wrongful" surgical operation, appellee was caused much unnecessary suffering and has become permanently disabled; that the operation caused her left knee to become stiff and her left leg to become shortened, and she has been put to large expense in endeavoring to be cured.

The substance of the charge is that appellant was guilty of negligence in advising and causing the operation of stretching the sciatic nerve to be performed, instead of treating appellee by means of external applications and internal remedies.   In support of this allegation a number of medical experts were examined.   Appellee's medical witnesses, called to prove the alleged malpractice, are six in number.   The first is Dr. Rose, who saw appellee a day or two before appellant visited her.   He found her apparently suffering a great deal from what he called sciatica, but he was unable to make an examination because she could not bear to be touched.   He says every doctor has a treatment of his own for that disease, and there is nothing specific in its treatment.   He says also that there is not any exact dividing line between an acute and chronic stage of the disease.   The second, Dr. Ranger, also states that there is no clearly defined special treatment for the disease; " it depends upon the particular facts surrounding

the case, and the man who has it in charge;" that the physician in charge "should be better qualified to state what treatment that particular case requires, than a doctor who sees it a year afterward," as did the witness. The third, Dr. Ellis, practices osteopathy, and believes that most diseases can be cured by that system, though not all; that he knows of no case where the cutting down on the nerve and stretching it has been of much success. He states, however, that he knows it is regarded by medical authorities and by medical men to be the proper remedy under certain circumstances to cut down upon and stretch the sciatic nerve, but he don't believe in using the knife for sciatic rheumatism. He says, moreover, that in acute sciatica, coming on suddenly and with intense pain, the leg is drawn up or turned up in a majority of cases. He treats the disease, stretching the sciatic nerve by manipulation, and making application of heat or cold, and claims to be successful in effecting cures. The fourth, Dr. Van Patten, says, "some of our authorities recommend a surgical operation, but I do not use it myself because I don't consider it the best treatment; I think it only makes a case worse." But he says that "some of the best surgeons of our city have recommended, and not only recommend but have put into practice the cutting of the nerve sheath and stretching of the nerve for extreme cases of sciatica." The fifth, Dr. Walgemott, does not consider "the stretching of the sciatic nerve" a proper remedy. He has never done it and never seen the operation performed. He treated appellee about three months in 1897, and states that "there is apparent shortening only, not a shortening of the bone," and that "there is trouble in the socket joint there from a thickening of the ligaments," which he thinks is the cause of the shortening of the limb. He states he has "seen cases of rheumatism and sciatica where the ball had even been thrown out of the socket." He states that the cutting down upon and stretching the nerve for sciatic rheumatism "is recommended by all the text writers of both America and England." The sixth witness for appellee, Dr. Blair, thinks "the proper treatment is constitutional

and local electricity," and has not concluded from his own experience and observation that a surgical operation is the better way, and has not resorted to it.    He also says that "the surgical operation for the purpose of reaching the nerve and scraping it or stretching it, is resorted to by the most skilled surgeons in the city," and that "a large number of standard text books" recommend surgery for sciatica, and that it is a recognized practice in America, Germany and France.    He has never seen the operation performed. Dr. Van Patten was recalled and testified that appellee's left leg is an inch and a half shorter than the right, and that this condition "is caused by the contraction of the tendons."

It appears, therefore, from the testimony of appellee's medical experts, without reference to those testifying in behalf of appellant, that the treatment recommended by appellant and submitted to on his advice is a recognized method of treating sciatic rheumatism.    This evidence does not, we think, tend to show that the treatment was not such as any skilled physician might not properly have recommended.    It does show that appellee's said witnesses do not themselves approve of it, whereas appellant's witnesses testify that it is proper and correct.    A difference of judgment among medical men as to the best course and method of treatment does not by any means tend to prove that either party is wholly wrong or wholly right.    A physician who has given a patient the benefit of his best judgment is not liable for negligence even if his judgment is erroneous, unless the error is so gross as to be inconsistent with reasonable and ordinary skill and care.    Fisher v. Niccolls, 2 Ill. App. 484.

It is claimed by appellee's attorneys that "the witnesses substantially agree that if the sciatica was of recent origin a surgical operation was malpractice;" and it is claimed that it was recent—of an acute and not a chronic nature— in this case.    We have examined the testimony with care, and do not regard it as substantiating the counsels' contention, that in acute cases the employment of surgery is necessarily malpractice.    Dr. Walgemott, one of appellee's

witnesses above referred to, states that in his opinion surgical treatment is not admissible in a new and acute case. One of appellant's witnesses, Dr. Thorne, stated that "after all medical treatment had been applied" then surgery is the only remedy. But there is much testimony tending to show that the nature and severity of the attack rather than its duration in point of time, properly determined the mode of treatment.

If it be conceded, however, that there is evidence fairly tending to show a surgical operation is only properly to be resorted to in extreme cases of long standing, it must still appear, not only that appellee's case was of recent origin, but that this was known, or with reasonable skill and care should have been known to appellant at the time. Whether it was recent or of long standing—an acute attack only, or chronic, is perhaps, as appellee's counsel states, "one of the facts in dispute." But appellee herself testifies that she first—quoting her language as given in the abstract— "felt this peculiar acting in the small of my back" about 1892. It suddenly became severe in December, 1896. At the time appellant was called in, she was suffering for the first time, she says, from severe pain in her back and limb, and she states that "for the last two or three weeks before going to the hospital I could not be moved without pain." Dr. Rose, who was first called to see appellant when the extreme and severe attack came on in 1896, states that "there is not any exact dividing line between acute and chronic; the one runs into the other and different men may draw the line at different places; it refers more to the length of time that a person has suffered from sciatica. The symptoms are about the same, only as to the difference in time." But Dr. Meyer says the difference is not wholly as to duration, but refers to severity also, and Dr. Murphy makes the same statement. Appellee's testimony above referred to, indicates that she had symptoms of the disease at least four years before the operation complained of, and three of appellant's witnesses, Doctors Thorne, Ferguson and Russell, testify that where ankylosis exists, of the char-

McKee v. Allen.

acter found at the time of the operation in the case of appellee, it indicates a chronic case of sciatica.   If, therefore, the judgment of appellant as a physician led him to consider and treat this as a chronic case of long standing, requiring surgical treatment, such judgment, even if we regard it as erroneous, can not be regarded, under this evidence, as inconsistent with reasonable and ordinary skill and care.

The question is whether appellant was justified, under the conditions shown by the evidence, in recommending surgical treatment in this particular case.   It is the duty of physicians and surgeons to exercise reasonable and ordinary care, skill and diligence in the practice of their profession.   To this extent they are liable and no further.   They are not required to possess the highest, but reasonable skill.   The burden of proof is upon the plaintiff in an action for malpractice to show the want of such care, skill and diligence, and also to show that the injury complained of resulted from failure to exercise these requisites.   This has not been done in the present case.   It can not be said as a matter of law, where a physician recommends a method of treatment recognized and approved by the standard authorities upon medicine and surgery as appropriate to the case in hand, and consults another physician or surgeon—as appellant did in this case—who has had experience in the use of such method, and who, after examination of the patient, concurs in his judgment, and the patient submits to the treatment upon such advice, that he has failed to exercise ordinary care, skill or diligence in making such recommendation. If he has not so failed he is not liable.   Utley v. Burns, 70 Ill. 162;  McNevins v. Lowe, 40 Ill. 209;  Barnes v. Means, 82 Ill. 379;  Small v. Howard, 128 Mass. 133;  Potter v. Warner, 91 Penn. State, 362.   And the physician or surgeon is not an insurer of a successful result.   Quinn v. Donovan, 85 Ill. 194.

The averment that the operation caused the stiffening and shortening of the leg and is responsible for appellee's present condition is not supported by the evidence.   Ap-

pellee's experts do not so testify, and eminent practitioners called by appellant state that these conditions are the result of the disease and not of the operation.

There is testimony of appellee and her friends to the effect that appellant represented that he had repeatedly performed such operation, and would perform it in person, whereas he had never actually operated, and procured Dr. Lee, a surgeon in attendance at the hospital, to do the surgical work in the present case. Appellant denies that he so stated. He states that he had several times witnessed the operation, but did not claim to have ever performed it in person. It is said appellant repeatedly told appellee that if she would consent she would be well and home in three weeks. But this is an action for malpractice, not for false representations, and disregarding the testimony of appellant to the contrary, we yet fail to see wherein the alleged statements, if made, were material.

There is evidence tending to show that appellant, in the effort to manipulate and straighten appellee's leg, several times resorted to what in her sensitive condition was very painful treatment. But it is apparent that it was employed as a curative measure, and it is not shown to have been injurious. If appellant's methods in this respect were harsh, appellee was not obliged to retain him in attendance, and was at liberty to employ others, as she did.

Appellee's attorneys rely upon the verdict as settling questions of fact. But there is no material dispute as to the essential facts. It is not disputed that the treatment complained of is a recognized method, used and recommended by excellent medical authorities. Appellee's witnesses so testify. It is not disputed that the disease was diagnosed as sciatica by other physicians as well as appellant, and that the symptoms so indicate. It is not claimed that the operation itself was not skillfully performed. The evidence utterly fails to show that the pain long suffered and the shortening of the limb by contraction of the tendons can be attributed to anything but the disease itself. There is some dispute as to whether the disease had become

chronic when the operation occurred.  But this is a medical or surgical question; and while there is some evidence both ways, it is not so conclusive either way as to enable us to say that appellant was mistaken in believing it to be chronic, and acting accordingly.  But if we take the verdict of the jury as finding by implication that it was acute instead of chronic at that time, and appellant's diagnosis be considered erroneous in calling it chronic, it must still appear that his error in judgment in this respect was not consistent with reasonable and ordinary skill and care; and it must further appear that surgical treatment of acute sciatica was so clearly unwarranted, and such a violation of sound rules of professional practice, as to be also inconsistent with ordinary and reasonable medical skill and care.  In view of the evidence before us, it is impossible to reach such a conclusion, and as was said in Fisher v. Niccolls, 2 Ill. App. 484 (487), we are of opinion " that the verdict is not sustained by any reasonable view of the evidence."

Appellee has been a great sufferer, and her condition can not but excite sympathy.  But it certainly does not appear from the evidence in this record that appellant's conduct is responsible therefor.

This suit was begun May 15, 1898.  But the summons then taken out was not put in the hands of the sheriff, nor was the declaration filed until January 9, 1899.  The operation complained of was performed December 15, 1896, and it is contended that the alias summons, which was served on defendant, was not issued, nor was the declaration filed until a month and seven days after the bar of the statute had arisen.  The argument is that the mere filing the precipe and issue of a summons not placed in the hands of the sheriff " is not such a commencement of the action as to arrest the bar of the statute."

If the suit was not begun until the second summons was issued and the declaration filed, then more than two years had elapsed since the cause of action arose.  The case of Schroeder v. The M. & M. Ins. Co., 104 Ill. 71, is, we think, conclusive upon that question in this court.  It is there

explicitly held that the suit was commenced by issuing the first summons, and the dissenting opinion shows that the question was considered whether the running of the statute of limitations was thereby arrested. There is language in some subsequent cases, that seems to imply the delivery of the summons to the sheriff is also necessary to constitute the commencement of a legal action in this State, though so far as we are advised, the case above cited has never been overruled or modified in the respect referred to. But see Fairbanks v. Farwell, 141 Ill. 354; Collins v. Manville, 170 Ill. 614; Elliott's General Practice, Vol. 1, Sec. 303; Hekla Ins. Co. v. Schroeder, 9 Ill. App. 472.

For the reasons indicated, the judgment of the Superior Court must be reversed and the cause remanded.