John Moline, Plaintiff in Error, v. William Christie and Eleanor Christie, Defendants in Error.

Gen. No. 18,319.

1. PHYSICIANS AND SURGEONS—*negligence in treating a wound.* In an action against a physician for negligence in treating a wound it is not error to direct a verdict for defendant where there is no expert testimony as to whether the infection was caused by defendant's failure to sterilize the instruments or by the removal of the bandage by third persons without authority, but the evidence seems to show that the infection developed after such removal and there is no expert testimony as to the effect of the subsequent treatment of the wound at a hospital to which plaintiff went.

2. EVIDENCE—*question as to testimony when not error to sustain objection to question whether at former trial.* In an action against a physician for negligence in treating a wound, where an expert witness states that he answered at a previous trial that in a case described in the question wet dressings should have been used and that he still thinks so, it is not error to sustain an objection to a question as to whether the answer was true when made and to allow the statement of opinion as to the bandages to stand, when the witness subsequently states that the question asked at the previous trial was different and explains without objection just what he said at the previous trial and in what respects he agrees or disagrees with it and when there is nothing to indicate what the hypothesis of the previous question was.

3. EVIDENCE—*exclusion of question where point is fully covered.* In an action for negligence in treating a wound on plaintiff's finger, it is not error to exclude a question as to what would be indicated if the skin when stretched over the bone and stitched was tight, where the witness fully covered the point in his testimony and it is not claimed that the infection complained of was produced by the manner in which the skin was stretched.

Error to the Superior Court of Cook county; the Hon. WILLIAM H. McSURELY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed May 9, 1913. Rehearing denied and opinion modified and refiled May 20, 1913.

JOHN C. KING and JAMES D. POWER, for plaintiff in error.

ROBERT J. FOLONIE, for defendants in error.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

On August 25, 1903, John Moline, plaintiff in error, who was employed as a conductor by the Chicago City Railway Company, met with an accident by which the end of the index finger of his right hand was crushed between two pieces of iron attached to and the parts of a street-car. The wound was dirty and ragged. He immediately went to the office of the defendants in error, William Christie and Eleanor Christie, who were practicing physicians and surgeons for treat-

ment and was treated by them. The wound, hand and forearm, within less than a week, become so infected that several operations had to be made for the purpose of draining off pus formed therein and the insertion of drainage tubes. The usefulness of Moline's hand is largely impaired. The main question presented in the record is whether or not the court erred in instructing the jury, at the close of plaintiff's evidence, to find the defendants not guilty. The declaration charges negligence on the part of defendants in treating the wound, and the question presented brings us to a consideration of the evidence for the purpose of determining whether there is any evidence tending to show a want of due care, skill and diligence on the part of the defendants, and that the injury complained of resulted therefrom which required the submission of the issues of fact to the jury.

The evidence shows that the plaintiff was injured while engaged in shortening the chain of the street-car on which he was conductor. He went immediately to the office of the defendants and explained the accident to them, and requested them to dress his finger. They washed his finger and cut off with scissors the end of it which was hanging by a particle of skin, and nipped off a part of the bone. After washing the wound, they stretched the skin over the bone and stitched it in place. From the plaintiff's testimony it appears that the scissors, nippers and needle and what was used as a thread were all taken from a case of instruments and applied to plaintiff's finger without being dipped into any liquid; dry cotton was then applied to the end of the finger and a bandage was put over the cotton. The next day defendants took off the dressing and put on another dry dressing. The Thursday following, the same kind of dressing was applied after taking out the stitches or some of them. From the time of the first dressing, the hand began to swell, and on Friday, before plaintiff went to the defendants' office to have his finger dressed, it was

Moline v. Christie, 180 Ill. App. 334.

painful and swelling and plaintiff so informed defendants. Another dry dressing was applied on Friday and plaintiff was directed to return on Saturday. When plaintiff went to the defendants' office on Saturday, the finger was festering and very painful. The dressing was removed and another dry dressing was put on. Between Saturday and Sunday plaintiff's hand was swelled to double its natural size and was exceedingly painful. On Sunday defendants lanced the index finger and a quantity of pus came out. A damp dressing was then put on. Plaintiff went to a hospital later on Sunday where three or four operations were performed on his hand during the ten weeks he was at the hospital by the hospital surgeons.

On Sunday before plaintiff went to the hospital, the dressing put on his hand by the defendants was taken off or partially removed and replaced in Mrs. Freak's house by Miss Freak without the order or request of defendants or either of them.

Dr. Richardson, a surgeon at the hospital, testified that plaintiff's hand was infected when he came to the hospital. He testified to the operations on plaintiff's hand after he came to the hospital and that dry dressings are sometimes used on open wounds. Dr. Mack, another surgeon at the hospital, testified to the same effect. He further testified in response to a hypothetical question giving the facts as to defendants' treatment substantially as above set forth, that the treatment given the wound by the defendants was proper except in the way they handled the instruments which should always be sterilized, and that wet dressings should have been used instead of dry, but not from the beginning; that it was proper to use dry dressings until septic symptoms developed when wet dressings should be used. He further testified that there is no treatment known to the science of medicine or surgery which can in every case prevent the creation or formation of pus bacilli in that portion of the body adjacent to the lacerated part,

and that the rapidity with which pus infection travels or evidences itself varies with the individual and the part of the body injured, and that pus germs might remain latent any time up to fourteen days before becoming evident to the attending surgeon or physician, but after they become active it is evident within a few minutes.

Dr. Price examined the plaintiff's hand at the time of the trial and testified to its condition and the limitation of action thereof. In answer to the same hypothetical question put to Dr. Mack, he testified that there was no evidence of any sterilizing of the instruments, and that the measures taken were improper; that the use of dry or wet dressings would be governed by the appearance of the wound. If there had been only a serous discharge before the dressing was removed by the patient or permitted to be removed by him and pus was found afterwards, the infection was the result of removing the dressing; if pus had developed before the removal of the dressing and before that time, and at that time the entire hand was very greatly swollen, the infection had been there, in his opinion, from the first part of the treatment, and the removal of the bandage would simply make it worse.

This is the substance of the expert testimony introduced by the plaintiff. No expert testimony was offered showing that the unfavorable results of the wound were caused by want of care or skill in the treatment by the defendants.

The law seems to be well settled that the mere fact that a good result is not obtained in the cure of a wound is of itself no evidence of negligence or lack of care, but there must be affirmative proof of such negligence or lack of care, and that the injuries complained of resulted therefrom. It seems also to be settled by the authorities that such proof can only be established by the testimony of experts skilled in the medical and surgical profession.

*Sims v. Parker,* 41 Ill. App. 284, was a malpractice case and the court said:

"Proof of a bad result or of a mishap is of itself no evidence of negligence or lack of skill. The defendant is qualified to practice medicine and surgery, and the evidence of the experts in his profession shows him competent and skillful. Before a recovery could be had against him, it must be shown that his treatment was improper or negligent, not merely that he was mistaken, or that his treatment resulted injuriously to plaintiff. A physician or surgeon, or one who holds himself out as such, is only bound to exercise ordinary skill and care in the treatment of a given case, and in order to hold him liable, it must be shown that he failed to exercise such skill or care. *McNevins v. Lowe,* 40 Ill. 209. The jury cannot draw the conclusion of unskilfulness from proof of what the result of the treatment was, but that the treatment was improper must be shown by evidence.

'No presumption of the absence of proper skill and attention arises from the mere fact that the patient does not recover, or that a cure was not effected.' *Haire v. Reese,* 7 Phil. R. 138."

In *McKee v. Allen,* 94 Ill. App. 147, which was likewise a malpractice case, this court said:

"It is the duty of physicians and surgeons to exercise reasonable and ordinary care, skill and diligence in the practice of their profession. To this extent they are liable and no further. They are not required to possess the highest, but reasonable skill. The burden of proof is upon the plaintiff in an action for malpractice to show the want of such care, skill and diligence, and also to show that the injury complained of resulted from failure to exercise these requisites."

In *Quinn v. Donovan,* 85 Ill. 194, it was held:

"The rule is well settled by the authorities, that appellant, who was engaged in the practice of his profession as a physician and surgeon, was required to possess, and in his practice use, reasonable skill, not perhaps the highest degree of skill that one learned in the profession might acquire, but reasonable skill,

such as physicians in good practice ordinarily use.
*Ritchey v. West,* 23 Ill. 385; *McNevins v. Lowe,* 40
Ill. 209; *Hallam v. Means,* 82 Ill. 379.''

In *Pettigrew v. Lewis,* 46 Kan. 78, which was a suit
to recover damages against a physician for a negli-
gent, careless and unskilful operation performed on
plaintiff's eyes, the court said:

''No medical or scientific evidence was offered show-
ing the cause of the present condition of the plaintiff's
eyes, nor that the defendants were negligent or care-
less in the performance of the operation. In fact no
witnesses having special skill or knowledge with refer-
ence to the treatment of the eyes were introduced in
behalf of the plaintiff. The burden rested upon the
plaintiff to show a want of due care, skill and diligence
in the operation, and that the defective condition now
existing is the result of such want of care, skill and
diligence. * * * The mere fact that the plaintiff's
eyes have been weak and sore since the operation was
performed does not prove negligence in the defendants
nor establish a liability against them. To maintain
her action, the plaintiff should have offered evidence
of skilled witnesses to show that the present condition
of her eyes was the result of the operation and that
it was unskilfully and negligently performed. 'This
evidence must, from the very nature of the case, come
from experts as other witnesses are not competent to
give it, nor are juries supposed to be conversant with
what is peculilar with the science and practice of
the professions of medicine and surgery to that degree
which will enable them to dispense with all explana-
tions.' *Tefft v. Wilcox,* 6 Kan. 46. The question
whether a surgical operation has been unskilfully per-
formed or not is one of science, and is to be de-
termined by the testimony of skillful surgeons,'' etc.

In the above case, in the absence of expert testi-
mony, showing that the defect in the plaintiff's eyes
was due to a want of ordinary care and skill on the
part of the defendants, the District Court sustained a
demurrer to the evidence, and the ruling of the Dis-
trict Court was sustained.

In *Martin v. Courtney*, 87 Minn. 197, the trial court directed a verdict in favor of the defendant at the close of the evidence. The Supreme Court of Minnesota in sustaining the ruling, said:

''Mere conjecture or supposition should not be sufficient to overcome the presumption in favor of the attending physician. Where the submission of important facts necessary to sustain a verdict rests on conjecture or suspicion alone, it should not be said in any enlightened tribunal that it could reasonably sustain a verdict. 'Mere possibilities can never establish the probability of a fact requisite to be proved in order to make a party liable in any action whatever. To decide otherwise would be to say that verdicts may rest upon mere possibility, speculation and conjecture.' *Minneapolis Sash & Door Co. v. Great Northern Ry. Co.*, 83 Minn. 370; *Swenson v. Erlandson*, 86 Minn. 263.''

In *Wurdemann v. Barnes*, 92 Wis. 206, the Supreme Court of Wisconsin upheld a directed verdict upon the same grounds indicated in the foregoing cases.

In *McGraw v. Kerr*, 126 Pac. Rep. 870, the Court of Appeals of Colorado discusses certain rules applicable to malpractice cases and which it considers established by a consensus of the authorities, and, among others, it stated the following:

''The skilfulness of a physician in diagnosis and treatment should be tested by the recognized rules of his own school, and must be determined by resort to the testimony and opinion of experts, not only as to the correct diagnosis, but also as to whether the defendant exercised ordinary care and skill in examining the case and applying the remedies; such opinion to be based upon the facts in evidence. *Burnham v. Jackson*, 20 Colo. 536.''

*Ewing v. Goode*, 78 Fed. 442, was an action brought by the plaintiff to recover damages on account of an alleged improper treatment of her eyes. She claimed that owing to a lack of proper care and skill on behalf of the defendant in operating upon her eye, she

was caused to suffer great pain and the loss of her right eye entirely and part of the sight of her left eye. In holding that there could be no recovery in the case, the court said:

"Before the plaintiff can recover, she must show by affirmative evidence—first, that defendant was unskilful or negligent; and, second, that his want of skill or care caused injury to the plaintiff. If either element is lacking in her proof, she has presented no case for the consideration of the jury. The naked facts that defendant performed operations upon her eye, and that pain followed, and that subsequently the eye was in such a bad condition that it had to be extracted, establish neither the neglect and unskilfulness of the treatment, nor the causal connection between it and the unfortunate event. A physician is not a warrantor of cures. If the maxim, 'Res ipsa loquitur,' were applicable to a case like this, and a failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad result, few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly all the 'ills that flesh is heir to.'   *   *   *

"But when a case concerns the highly specialized art of treating an eye for cataract, or for the mysterious and dread disease of glaucoma, with respect to which a layman can have no knowledge at all, the court and jury must be dependent on expert evidence. There can be no other guide, and, where want of skill or attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury."

In *Goodman* v. *Bigler,* 133 Ill. App. 301, plaintiff brought suit against the defendant, a physician, to recover for alleged malpractice in the treatment of a fracture of plaintiff's leg. Following the treatment if appeared that plaintiff's leg was badly deformed. The court said:

"Whether or not the treatment was ordinarily skilful and appellant's conduct and management of the

case was that of an ordinarily careful and skilful physician, is largely an expert question to be determined from the testimony of witnesses learned and experienced in that kind of service." To the same effect is *Kruger v. McCaughey,* 149 Ill. App. 440.

The expert witnesses did not state that the infection in plaintiff's finger was, in their opinion, caused by the failure of defendants to sterilize the instruments; hence it was a matter of mere conjecture or possibility before the jury. The evidence of Dr. Price is uncontradicted that "assuming infection before the removal of the bandage, allowing the air to come in contact, it being in a state of irritation on the verge of getting one way or the other, having undoubtedly been infected by grease and dirt, introduction of air and removal of dressings would throw it over the border line, which would be infection of germs." Whether the infection was the result of the removal of the bandage or not was a matter of mere conjecture in the absence of expert testimony. "When Moline first came into the hospital there was no pus in his finger or any that came out. Later on there was lots of pus came out," according to the testimony of Dr. Mack. This seems to establish that the infection developed after plaintiff entered the hospital which was at a later hour on the same day that the bandage was removed by the Freaks. There can be no question that the original injury was infected and a possible cause of the subsequent infected condition. What effect, if any, the treatment at the hospital, including the insertion of drainage tubes in the hand, wrist and forearm, had in producing the limitation of movement now complained of, would seem to the mind of an ordinary layman to be an important question. No expert testimony was offered, however, on this important question. Defendants were not responsible for what occurred at the hospital.

Our conclusion is that the plaintiff's evidence left the important questions of fact in the realm of possibilities, speculation and conjecture. The jury had no

basis in the evidence upon which to found the necessary conclusions of fact. Under the authorities cited above, the evidence was not sufficient to carry the case to the jury, and the trial court did not err in directing a verdict.

It is argued that the court erred in sustaining an objection to a question put to Dr. Mack. The witness had testified on his direct examination:

"It was proper and skilful to apply dry cotton and a dry bandage to the wound under the circumstances; we do that right along, expectantly, and watch the symptoms, but if any septic symptoms develop we put on wet dressing. I testified at the previous trial that the only thing the matter with the case as described in that question was that wet dressings should have been used instead of dry, and I still think so. My opinion has not undergone any change since then. Q. Was that answer true when you made it?"

Objection was sustained to the question. Subsequently, on plaintiff's motion, the portion of the witness' answer that he was still of the opinion that under the hypothesis wet dressings should have been used, was permitted to stand.

The witness explained that the question asked him on the first trial was not the same as the one asked him on the second trial, and that the hypothesis then made to him was different. He testified:

"The question asked at the previous trial was asked different and I said if wet dressings were needed they should have been applied, and I still think so, but I don't think they should have been applied from the beginning of the case. I would have never used them from the beginning of the case. They would interfere with the healing."

This testimony was brought out by the plaintiff after the court's ruling, and if there was any error in the court's ruling it was cured by subsequently allowing the witness to explain just what he had said on the previous trial, and in what respects he agreed or disagreed with it at the time. The very matter which the plaintiff urges was excluded, was subsequently ad-

mitted without objection. The question was not read to the witness, or any answer that he made on the previous trial. There is nothing in the record indicating that the hypothesis was the same. Furthermore, the questions were as to matters of opinion and not of fact. Facts are immutable, or supposed to be so, and if changed the "conscience of a witness may be awakened," but opinions are mutable and grow with the science, the study of which is the basis of the opinion. A change of opinion is not a matter of conscience, but of progress.

Another question is suggested, namely, "Supposing that the skin, when stretched over the bone and was stitched, was tight, what would that indicate?" We see no particular point to the question. If it goes to the point that if the skin was stretched over the bone it would be improper, there was no error because that point is covered in other parts of the physician's testimony. Immediately following the question, the physician was asked as to the propriety of stitching the skin, and said that he could not answer whether it was proper or improper to do so, and that it was a matter of judgment; and the physician further testified that if the skin, after having been stretched, did not pull or become tightened so that there would be a distinct retraction over the stump, then that would be bad, and, further, he said: "As to the stretching the skin over the bone and stitching it, it would depend upon the amount of skin, the doctor had and was called upon to stretch." This testimony is much broader and comprehensive than any testimony which the witness could give in answer to the questions ruled out. It cannot be said, moreover, that it was of any importance in the case, for it is nowhere claimed that the infection of plaintiff's hand was produced by the skin being stretched tight or loose.

We find no reversible error in the rulings upon evidence. The judgment is affirmed.

*Affirmed.*