(No. 4624— )

W. Eugene Dorris, Administrator of the Estate of George
Rapach, Deceased, Claimant, *vs.* State of Illinois,
Respondent.

*Opinion filed November 13, 1956.*

G. William Horsley and W. G. Eovaldi, Attorneys
for Claimant.

Latham Castle, Attorney General; C. Arthur
Nebel, Assistant Attorney General, for Respondent.

Tolson, C. J.

W. Eugene Dorris, Administrator of the Estate of
George Rapach, deceased, filed his complaint against re-
spondent for the alleged wrongful death of claimant's
intestate.

The record consists of the following :

1. Complaint.
2. Departmental Report.
3. Reply to Departmental Report.
4. Transcript of evidence.
5. Abstract of evidence.
6. Statement, brief and argument of claimant.
7. Statement, brief and argument of respondent.
8. Reply brief of claimant.

Respondent did not file an answer to the complaint,
hence, under Rule 11 of the Court of Claims, a general
traverse shall be considered as filed.

The complaint consists of Three Counts:

(a) Count One alleges that respondent failed to
provide suitable care and supervision of another patient,
which resulted in injury and death to the intestate.

(b) Count Two alleges that respondent, by its agents and servants, negligently treated the intestate's injuries, which resulted in his subsequent death.

(c) Count Three is in the alternate alleging that, if he is not entitled to recover under Count Two, he is then entitled to recover for funeral expenses, probate fees and attorney's fees.

Upon oral arguments, counsel for claimant conceded that the evidence would not support Count One, and, as to Count Two, the pecuniary loss consisted of the balance of a government check in the amount of $6.00 per month projected for the life of the intestate according to the usual mortality tables.

The facts of the case are as follows:

George Rapach was admitted to Lincoln State School on July 19, 1949, and was a patient in said institution until the time of his death on September 16, 1953. He was a severe Parkinsonian, which affected his speech, and limited his mobility. Because of the numerous falls he had suffered, a special gear was provided to protect his head.

On September 14, 1953, at about 3:30 P.M., he went to the wash room with John Sparazinski, a fellow patient. Trouble developed between them, and John either hit or kicked him in the abdomen. George was put to bed, and at about 4:00 P.M. Dr. Azubalis made his initial examination.

Dr. Azubalis testified that he was unable to understand George's account of the injury, because of the speech impediment. He stated the pulse was normal, temperature was normal, and breathing was normal. George would state that the area of injury hurt, and

then he would say it did not hurt. There was also a report that George had vomited.

Because of previous falls, he had numerous yellow patches on his body of a similar nature. (Deposition, Page 25).

Dr. Azubalis ordered a routine blood count—sedimentation rate, ice packs and penicillin, but at this time he was unable to make a diagnosis.

On September 15, at 9:00 A.M., Dr. Azubalis made his round of the ward. He examined George, and found that his temperature had risen to 101, and pulse 128. He stated that he examined the blood picture, and found a slight elevation of the white count, but the sedimentation rate was normal. The injured area was examined, but there was no tenseness of the muscles. He further stated that he found a subcutaneous blood suffusion in his scrotum. At this time, Dr. Azubalis suspected internal bleeding. (Deposition, Page 35).

He then ordered hot and cold packs, and about 1:00 P.M. conferred with Dr. Albaum, the Staff Surgeon. There is some conflict in the testimony as to the nature of this conference, as Dr. Azubalis stated that he believed he suggested an exploratory. Dr. Albaum denies that an exploratory was recommended. He further stated that the decision to operate was his responsibility, and that he did not believe that the medical history warranted an exploratory, because of the danger connected with the operation. He, therefore, ordered a further blood count and conservative treatment.

It appears from the evidence that, if the suspicion of internal bleeding was correct, an X-Ray would not have disclosed this fact. However, it appears that an X-Ray

might have disclosed a collection of gas in the bowel, indicating a rupture of the intestine.

The record also shows that the patient was examined by Drs. Vladimir Magier and Thinathin Alschibaja, who recorded their findings on the hospital chart, but did not confer or make any recommendations for treatment.

Dr. Albaum testified that he examined the patient at 1:00 P.M. on September 15. He considered either internal bleeding or a ruptured bladder as a possible diagnosis, but felt that the evidence was incomplete to make a definite diagnosis, and ordered conservative treatment.

He stated that he again examined the patient at 6:00 P.M. and at 9:10 P.M., and at the latter time the patient was in shock, the abdomen was rigid and distended, and it would have been impossible to operate.

The patient died at 7:00 A.M. on the 16th of September, and an autopsy disclosed a rupture of the small intestine, resulting in peritonitis.

The degree of care required by a physician and surgeon is set forth in *Olander* vs. *Johnson*, 268 Ill. App. 89 at page 95:

"The duty which a physician and surgeon owes his patient is to bring to the case at hand that degree of knowledge, skill, and care, which a good physician and surgeon would bring to a similiar case under like circumstances. While this rule, on the one hand, does not exact the highest degree of skill and proficiency attainable in the profession, it does not contemplate merely average merit. (*Holtzman* vs. *Hoy*, 118 Ill. 534; 21 R.C.L. *Physicians and Surgeons*, Sec. 27.)

To this extent he is liable and no further. He is not required to possess the highest, but reasonable skill. The burden of proof is upon the plaintiff in an action for malpractice to show the want of such care, skill and diligence, and also to show that the injury complained of resulted from failure to exercise these requisites. (*McKee* vs. *Allen*, 94 Ill. App. 147; *Goodman* vs. *Bigler*, 133 Ill. App. 301; 21 R.C.L. *Physicians and Surgeons*, Sec. 49.)

Negligence is always a question of fact that must be alleged and proved as averred. It cannot be supported by a mere conjecture or surmise, but must

be made referable to some specific cause or defect. (*McCormick Harvesting Machine Co.* vs. *Gabris*, 130 Ill. App. 624, 631; *Pioneer Fire Proof Construction Co.* vs. *Sandberg*, 98 Ill. App. 36.)

Before a plaintiff can recover in a malpractice case, it must be shown by affirmative evidence, first, that defendant was unskilful and negligent, and second, that his want of skill and care caused injury to the plaintiff. If either element is lacking in the proof, no case is presented for the consideration of a jury. (*Ewing* vs. *Goode*, 78 Fed. 442; *Moline* vs. *Christie*, 180 Ill. App. 334; *Wallace* vs. *Yudelson*, 244 Ill. App. 320; *Sims* vs. *Parker*, 41 Ill. App. 284; *McKee* vs. *Allen*, supra; *Phebus* vs. *Mather*, 181 Ill. App. 274; *Graiziger* vs. *Henssler*, 229 Ill. App. 365.)

Mere conjecture or supposition should not be sufficient to overcome the presumption in favor of the attending physician. Alleged negligence and resulting injury must be proved as averred. A physician is not an insurer. (*Goodman* vs. *Bigler*, supra; *Sims* vs. *Parker*, supra; *Blodgett* vs. *Nevius*, 189 Ill. App. 544; *Wallace* vs. *Yudelson*, supra; *Graiziger* vs. *Henssler*, supra.) Proof of a bad result or of a mishap is of itself no evidence of negligence or lack of skill. (*Sims* vs. *Parker*, supra; *Moline* vs. *Christie*, supra; *Blodgett* vs. *Nevius*, supra.)

The doctrine of res ipsa loquitur is not applicable to situations like the case at bar, (*Guell* vs. *Tenney*, 262 Mass. 54, 159 N.E. 451; *Funk* vs. *Bonham* (Ind. Appr.), 151 N.E. 22; *Goodman* vs. *Bigler*, supra; *Graiziger* vs. *Henssler*, supra), for, unless the accident or injury sustained by the plaintiff bespeaks the defendant's wrong, there is no proof of culpable negligence. (*Chicago & E. I. R. Co.* vs. *Reilly*, 212 Ill. 506.)

As a general rule, there must be expert testimony to show that a bad result was caused by the alleged unskilful or negligent act. (*Moline* vs. *Christie*, supra; *Goodman* vs. *Bigler*, supra; *Kruger* vs. *McGaughey*, 149 Ill. App. 440; *Nelson* vs. *Sandell*, 202 Iowa 109, 209 N.W. 440; 46 A.L.R. 1447.)"

Claimant has alleged negligence in Counts Two and Three of the complaint. However, there is no direct expert testimony to show that a bad result was caused by an alleged unskillful or negligent act.

Taking the evidence most favorable to claimant, it appears that there was evidence of vomiting, an increase of pulse and temperature as the case progressed, and a statement by one of the doctors that, if the diagnosis of a ruptured intestine had been made at an earlier stage, an exploratory would have revealed the condition,

and there would have been a fair chance of saving the patient.

Counsel also argues plausibly that, since George Rapach was unable to talk adequately to disclose subjective symptoms, the medical staff should have ordered X-Rays in the hope that something would have been revealed.

Respondent argues with equal force that the speech impediment prevented the staff from determining subjective symptoms, and that the discolored area was simply one of a dozen such discolorations appearing on the patient's body.

Respondent finally urges that the patient received the best of hospital care. In a period of forty hours, four doctors and a staff of nurses made every reasonable effort to diagnose the nature of the trouble, and all standard procedures were followed. Until the patient went into shock, it could not have been said with medical certainty that the patient suffered from peritonitis.

From a reading of the record, we believe that respondent made a genuine effort to diagnose and treat the patient. There is no evidence of neglect, despite the bad result. We do not believe that claimant has met the burden of proof required in a malpractice case; therefore, an award is denied.