Helen Olander, Appellee, v. Tessing S. F. Johnson, Appellant.

Gen. No. 8,123.

Heard in this court at the October term, 1929. Opinion filed June 11, 1930.

Donovan, Bray & Gray and Edward W. Rawlins, for appellant.

Snapp, Heise & Snapp, for appellee.

Mr. Justice Jones delivered the opinion of the court.

This is an appeal from a judgment for $8,500 and costs recovered by Helen Olander, plaintiff, against Tessing S. F. Johnson, defendant, a physician and surgeon. A suit was instituted to recover damages claimed on account of defendant's alleged negligence in leaving a laparotomy sponge in plaintiff's body in the course of an abdominal operation. Plaintiff suffered intensely for several months after the operation and a sponge was finally found in and removed from her abdomen. If she is entitled to a judgment, this one is not excessive.

There is little dispute as to the material facts. Defendant is an experienced surgeon and has practiced his profession in Joliet continuously since 1920. It

appears that approximately 60 per cent of his professional work has been surgery, and that he has performed 800 or 900 operations at the hospital hereinafter mentioned. Plaintiff consulted him as to her physical condition, and upon an examination, he concluded she was suffering from an appendix condition and a retroverted uterus, for which he advised an operation. He gave her an admittance slip to St. Joseph's Hospital, a charitable institution, operated by the Franciscan Order at Joliet. The hospital is recognized by the American College of Surgeons as being modern, and supplied with latest and best equipment.

Upon plaintiff's arrival at the hospital, she was prepared for the operation, and on the following day was operated on by defendant. In the performance of the operation, he was assisted by the regular operating-room staff of the hospital, consisting of Dr. Chapman, an interne, Sister Antonella, Sister Julia, and Sister Rogaria. Miss Schmitz, an employee of the hospital, was also present. All of said assistants were connected with or employed by the hospital. None of them were in defendant's employ. Dr. Chapman's duty was to assist the operating surgeons in all operations. He held the retractors that kept the wound open and handed instruments to the operating surgeons. Sister Antonella administered anaesthetics and made records of sponge counts immediately after each operation. It was the duty of Sister Julia to hand the clean or sterile sponges to the operating surgeon as needed, and to keep count of the sponges. It was the duty of Sister Rogaria to take charge of and keep count of the used sponges.

The method of counting and keeping track of all sponges used at operations was as follows: The sponges were made by the nurses at the hospital, counted, put up in packages, and sterilized. Laparotomy sponges are larger than the other sponges used, and are put in packages of 3. The smaller sponges

are put up in packages of 12. Before beginning an operation, the sponges are brought into the operating room by the nurse whose duty it is to handle clean sponges. They are counted by her, and as needed, are handed by her to the surgeon, forceps being first attached to the laparatomy sponges. As the sponges are used, they are thrown into a receptacle by the surgeon and taken charge of by a nurse, who places the small sponges in piles of 12, and the used laparotomy sponges in piles of 3. When the operation is finished, and before the incision is closed, the unused sponges are counted by the nurse in charge thereof, and the used sponges are counted by the other nurse. The total of the two counts is compared with the number brought into the operating-room, in order to ascertain if all sponges are accounted for. The nurse in charge of the clean sponges announces whether or not the count is correct. If announced correct, the anaesthetist immediately makes a written memorandum of the count on the operation record. This method was followed not only by defendant, but by all surgeons operating at St. Joseph's Hospital, and was used in the instant case. The small sponges are used to sponge up the blood and secretions, and in operations upon the appendix or uterus the large pads, or laparotomy sponges, are placed in the abdomen to keep back the mesentery or contents of the abdomen.

In operating on plaintiff, the testimony shows that Dr. Johnson made the usual midline incision about six inches in length below the navel, and after exposing the contents of the abdomen, packed the intestines away with hot laparotomy sponges. He then removed the appendix and performed an operation upon the womb. Defendant testified that he then inspected the field of operation, saw all of the pads, and after asking for the sponge count, which was reported correct, he had no further occasion to explore the abdomen; that such further exploration would have been danger-

ous, in view of the highly inflamed appendix, and that there was also danger of infection; that approximately 15 or 20 sponges had been used, and after asking for the sponge count and finding they had all been removed, he closed the abdomen in the usual manner, and did not intentionally leave a sponge in it.

Sister Julia testified that in the course of the operation she handed the clean sponges to defendant, as he called for them; that when the operation was finished, she counted the clean sponges which had been brought in but not used; that Sister Rogaria counted the used sponges and the two counts agreed with the number brought in at the start of the operation; that she compared the count before defendant sewed up the wound, and the count was correct and all sponges accounted for; that she reported to defendant that the sponge count was correct, and that Sister Antonella, the anaesthetist, made a record thereof. She also testified that the laparotomy sponges which were used had forceps attached when they were handed to the doctor, which forceps were later removed by the nurse having charge of the used sponges; and that there are no other pads in the operating-room, except those brought in for the particular operation. The sponge or pad later found in plaintiff's abdomen had no forceps attached.

The testimony shows that in an abdominal operation, it is necessary to use sponges to wall off the bowels; otherwise, an extensive operation could not be performed; that the sponges become soaked with blood and secretions and may feel like any other tissue; that occasionally they become rolled up in the abdomen behind the bowels; that there are numerous coils of intestines and the sponges cannot be seen or felt readily; and that it is sometimes almost impossible to distinguish the sponges from the tissues of the abdomen or to locate them. A surgeon of large experience testified that when the abdomen is opened in

an operation, the surgeon must think fast and quick; that relieving the surgeon of the responsibility of looking after the sponges enables him to concentrate his thoughts upon the operative technique, and thereby do a better, safer, and quicker operation than he could possibly do if he had to account for the sponges. Defendant also testified in substance that when the abdomen is opened, the operating surgeon must devote his entire time to taking care of the conditions that obtain there, and that it would jeopardize the life of the patient for the surgeon to take the time to make and keep a count and make a record of the sponges used.

The duty which a physician and surgeon owes his patient is to bring to the case at hand that degree of knowledge, skill, and care which a good physician and surgeon would bring to a similar case under like circumstances. While this rule, on the one hand, does not exact the highest degree of skill and proficiency attainable in the profession, it does not contemplate merely average merit. (*Holtzman v. Hoy*, 118 Ill. 534; 21 R. C. L. Physicians and Surgeons, sec. 27.) To this extent he is liable and no further. He is not required to possess the highest, but reasonable skill. The burden of proof is upon the plaintiff in an action for malpractice to show the want of such care, skill, and diligence and also to show that the injury complained of resulted from failure to exercise those requisites. (*McKee v. Allen*, 94 Ill. App. 147; *Goodman v. Bigler*, 133 Ill. App. 301; 21 R. C. L. Physicians and Surgeons, sec. 49.)

Negligence is always a question of fact that must be alleged and proved as averred. It cannot be supported by a mere conjecture or surmise, but must be made referable to some specific cause or defect. (*McCormick Harvesting Machine Co. v. Gabris*, 130 Ill. App. 624, 631; *Pioneer Fire Proof Construction Co. v. Sandberg*, 98 Ill. App. 36.)

Before a plaintiff can recover in a malpractice case, it must be shown by affirmative evidence, first, that defendant was unskilful and negligent, and second, that his want of skill and care caused injury to the plaintiff. If either element is lacking in the proof, no case is presented for the consideration of a jury. (*Ewing v. Goode,* 78 Fed. 442; *Moline v. Christie,* 180 Ill. App. 334; *Wallace v. Yudelson,* 244 Ill. App. 320; *Sims v. Parker,* 41 Ill. App. 284; *McKee v. Allen, supra; Phebus v. Mather,* 181 Ill. App. 274; *Graiziger v. Henssler,* 229 Ill. App. 365.)

Mere conjecture or supposition should not be sufficient to overcome the presumption in favor of the attending physician. Alleged negligence and resulting injury must be proved as averred. A physician is not an insurer. (*Goodman v. Bigler, supra; Sims v. Parker, supra; Blodgett v. Nevius,* 189 Ill. App. 544; *Wallace v. Yudelson, supra; Graiziger v. Henssler, supra.*) Proof of a bad result or of a mishap is of itself no evidence of negligence or lack of skill. (*Sims v. Parker, supra; Moline v. Christie, supra; Blodgett v. Nevius, supra.*)

The doctrine of *res ipsa loquitur* is not applicable to situations like the case at bar (*Guell v. Tenney,* 262 Mass. 54, 159 N. E. 451; *Funk v. Bonham* [Ind. App.], 151 N. E. 22; *Goodman v. Bigler, supra; Graiziger v. Henssler, supra*), for unless the accident or injury sustained by the plaintiff bespeaks the defendant's wrong, there is no proof of culpable negligence. (*Chicago & E. I. R. Co. v. Reilly,* 212 Ill. 506.)

As a general rule, there must be expert testimony to show that a bad result was caused by the alleged unskilful or negligent act. (*Moline v. Christie, supra; Goodman v. Bigler, supra; Kruger v. McGaughey,* 149 Ill. App. 440; *Nelson v. Sandell,* 202 Iowa 109, 209 N. W. 440; 46 A. L. R. 1447.) The leaving of a sponge by a physician in a patient is not negligence *per se.*

(*Funk v. Bonham, supra; Guell v. Tenney, supra; Sims v. Parker, supra.*)

The record shows that after Dr. Johnson had removed plaintiff's appendix and operated upon the womb, he made an inspection of the field of operation, and did not find any sponge left in her body, and that to have made a further exploration would have been dangerous to the patient. The uncontradicted testimony also shows that it is for the patient's best interests that an operating surgeon be enabled to devote his time and attention almost exclusively to the operation at hand, and to depend in a large measure upon the nurses in attendance for the sponge and instrument count; otherwise, the surgeon's attention might be distracted from the more vital matters and the life of the patient jeopardized. While defendant testified that in his opinion an operating surgeon was entitled to rely upon the sponge count announced by the nurses in attendance, the testimony does not show that in this case he wholly relied upon the nurses' report of the sponge count, as he testified he inspected the field of operation himself.

Sister Rogaria did not testify. She had severed her connection with the Franciscan Order, and her whereabouts were unknown at the time of the trial. Sister Julia testified that she counted the unused sponges; that Sister Rogaria counted the used sponges and reported the number to her; that she then checked the counts with the number of sponges brought into the room and all sponges were accounted for.

Notwithstanding the apparent care exercised by the nurses to make an accurate count of the sponges, a mistake was made by one of them. It is immaterial which one made it. The crux of the case is whether or not the defendant is responsible for the mistake and can be mulcted in damages on account of it. In determining the question of liability, it is necessary to inquire as to his duty in the premises. In considering

this question, it is important to remember that hospitals are classified in legislation and by text-writers as (1) public hospitals, (2) charitable hospitals, and (3) private hospitals. A public hospital is one owned by the government or some branch thereof, and is devoted chiefly to public uses and purposes, in the absence of statutory provision to the contrary. It is not liable for injuries to a patient caused by the negligence or misconduct of any of its employees or agents. A charitable hospital is one organized not for the purpose of making profit, but is maintained primarily for charitable purposes. Such a hospital is not liable for the torts and omissions of its professional staff, unless it has failed to exercise due care in selecting it. A private hospital is one which is founded and maintained by a private person or corporation. Its liability for damages growing out of negligence is the same as that of natural persons.

Generally an operating surgeon is not legally responsible for the mistake of a nurse not his·employee, where an operation is performed at a hospital not owned or controlled by the surgeon. (*Funk v. Bonham, supra; Guell v. Terney, supra; Blackburn v. Baker,* 237 N. Y. S. 611; *Hale v. Atkins,* 215 Mo. App. 380, 256 S. W. 544.)

All classes of hospitals have at least one power in common. It is the right to prescribe reasonable rules for the conduct of the institution and may standardize the hospital. (*Harris v. Thomas* [Tex. Civ. App.], 217 S. W. 1068.) The hospital at which plaintiff was operated was conducted by the Franciscan Order of the Roman Catholic Church. It was a charitable institution, and maintained its own corps of nurses, internes, and staff officers. A physician who used the operating room was required by the rules of the hospital to employ the equipment of the hospital. In the case of the particular operation, it included the nurses in attendance, the sponges supplied, and the records

kept. Every physician who avails himself of the privilege of operating in a hospital of this character must conform to the rules of the hospital. Unless he does, he may be deprived of the privilege of practicing his profession at that institution. (*People v. Julia F. Burnham Hospital,* 71 Ill. App. 246.)

Charitable hospitals being generally established through motives of philanthropy, the right of admission rests solely in the discretion of the hospital authorities. No one has individually a right to demand admission. (*McDonald v. Massachusetts General Hospital,* 120 Mass. 432.) But if he is admitted, he impliedly consents to abide by the reasonable rules and regulations of the hospital the same as his physician does.

It is indisputable that the operation involved in this case was conducted, so far as the defendant's conduct was concerned, in strict accordance with the established rules and customs of the hospital. It is not denied that he endeavored to see that the rules of the institution concerning the count of sponges were carefully and correctly carried out. That a mistake was made by one of the nurses was no fault of his and appears to have been made in spite of his caution. He inquired about the count and was informed that it was correct. He made an ocular examination without discovering the error. He followed the approved method of examination unless it is known that a sponge is missing. Under all the circumstances, we do not see how he could have been expected to do more.

The trial court, however, in its instructions to the jury, took the view that it is the absolute duty of the surgeon to know that all sponges have been removed from the patient's body. In accordance with this view, the court gave a number of instructions, of which plaintiff's Instruction No. 9 is a type. It is as follows:

"The court instructs the jury that a surgical operation begins when the opening is made into the body

of the patient and ends when the opening has been closed. The removal of the sponges inserted by the surgeon is a part of the operation and if the jury believe from the evidence that the defendant inserted and then negligently left a pad or sponge in plaintiff's body, and if you further find from the evidence that plaintiff thereby sustained damage, then the plaintiff is entitled to recover.''

This instruction not only directs a verdict, but places a greater duty upon the surgeon than is devolved upon him. It ignores the necessity of his complying with the reasonable rules of the hospital and of the patient's implied acceptance of the condition of her admission to the hospital.

As we have before said, it is difficult for us to perceive any lack or want of care on the part of defendant, with respect to the removal of the sponges from plaintiff's body. Because of our view of the case, the judgment is reversed and the cause remanded.

*Reversed and remanded.*