Dr. A. L. Stapler, Defendant in Error, v. Max Brownstein, Plaintiff in Error.

Gen. No. 34,511.

58

Opinion filed March 24, 1931.

H. A. BARNHARDT, for plaintiff in error.

MEYER H. WEINSTEIN and JAMES F. WRIGHT, for defendant in error; EDWARD W. RAWLINS and GEORGE A. SCHNEIDER, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

By this writ of error defendant seeks to reverse a judgment against him for $250, rendered after a trial without a jury in October, 1929.

Plaintiff's claim of $250 was for medical services in the treatment of defendant's fractured leg from August 21, 1927, to September 26, 1927, at the Lakeview Hospital, Chicago. On the trial plaintiff was the only witness in his behalf and defendant testified, as did his brother, Sidney Brownstein, and Dr. Robert O. Ritter, for him. Certain X-ray pictures were introduced.

From plaintiff's testimony the following facts appear in substance: Plaintiff was a practicing physician and surgeon of over 17 years' experience with office in Chicago, and was also an attending surgeon at the hospital for "bone cases." He had no control over the management of the hospital. He was acquainted with defendant and when the latter was brought to the hospital, on the afternoon of August 21, 1927, immediately following his accident, he requested that plaintiff "take care of him." Upon examination then made, and the taking of X-ray pictures, plaintiff found that each of the bones—the tibia and fibula— of defendant's right leg was broken. On the following day plaintiff, with the assistance of two internes (em-

ployees of the hospital), Doctors Zeller and Walsh, attempted to reduce the fractures by weights and manipulation, but without success because "a piece of muscle had gotten attached between the two bones." Defendant was informed of this and that in plaintiff's opinion the bones could not be put into place without a surgical operation, which defendant consented to. The usual preparation for the operation was made by Doctor Reichman (another interne and employee of the hospital), but not in plaintiff's presence. Reichman shaved defendant's leg, applied a solution of iodine, washed it off with alcohol and bandaged the leg. On the afternoon of August 23rd, plaintiff visited defendant, and, upon removing the bandage, found blisters on the leg, caused by the iodine. He dressed the leg with salve, wrapped it up again, and, because of its then condition, postponed the operation. During several following days he personally applied healing solutions, etc. Early on Saturday morning, August 27th, he examined the leg, found that the blisters had "flattened out" and that the leg was in such condition that he could safely operate, and, with the assistance of the three internes, performed the operation, during which he "reduced the fracture of the tibia," "applied a plate over the anterior surface," "sewed up the wound" and "applied antiseptic dressings and put on a splint and bandages," etc. Thereafter defendant remained in the hospital, receiving almost daily treatments from plaintiff, until September 26, at which time the wound had not fully healed and required further treatments. On that day, upon the insistence of defendant's brother and against plaintiff's advice, defendant was removed from the hospital, taken to another one and put under the care of Dr. Ritter. Plaintiff further testified that a fair and reasonable charge for the services he had rendered to defendant was $250, and this testimony was un-

disputed. Plaintiff further testified that when defendant was about to leave the hospital he stated to him (plaintiff) that ''he was thoroughly satisfied with the treatment I gave him but that he was neglected by the internes.'' When defendant was on the stand he did not deny making the statement. Plaintiff further testified that the application of iodine was usual and customary, that ordinarily such application would not cause blisters, but that ''it just happened that he (defendant) had an idiosyncrasy or susceptibility to antiseptics.'' This testimony also was undisputed.

The gist of defendant's defense, as shown by his testimony, was (1) negligence in using a too strong iodine solution, causing the blisters, and (2) malpractice in performing the operation before the blisters had fully healed, causing infection. He contended that because of this negligence and malpractice plaintiff should not be allowed to recover anything for his services.

Dr. Ritter testified in substance that immediately after defendant's removal to said other hospital, he for the first time examined the leg; that there was ''a raw, sloughing skin on the calf of the leg,'' which he ''cleaned as best he could'' and put on fresh dressings; that he found ''ulcers—sort of sloughing ulcers'' on the calf of the leg, also ''two very small discharging sinuses on the front part of the leg, over the shin bone''; that an X-ray picture, then taken, showed a screw plate across the line of the fracture of the tibia; that he removed the plate and applied an antiseptic dressing; that ''apparently'' there was then no bony union of the bones of the tibia,—''that is, solid enough to be demonstrable by examination''; that there was at the time ''some serous discharge through those small sinuses,'' which ''was not pus, but a thin serous fluid that oozes out from tissue''; that thereafter he applied various dressings ''as the case seemed to in-

dicate from time to time''; that at two different times he ''put on small pinches of skin over two of the areas that had sloughed''; that defendant remained in said other hospital for about seven weeks, during which period he (Ritter) from time to time continued to treat the leg; that when defendant was discharged from the hospital the skin ulcers had all practically healed; and that on the day before the trial, upon an examination of the leg, he found it ''covered with scars, wherever these sloughing areas of the skin had been.'' A long hypothetical question, based largely upon the testimony given by defendant (not skilled in the science of medicine or surgery) and much at variance with the testimony given by plaintiff, was put to the witness, and he was asked if he had ''an opinion as to whether the treatment given at the Lakeview Hospital to the hypothetical man, and to his leg, was done with reasonable skill and diligence.'' Over the objection of plaintiff's attorney the witness was allowed to answer that he had an opinion, and that his opinion was that ''it (evidently meaning the leg) was not healed as completely as they thought it was, when it was operated upon.'' The motion of plaintiff's attorney to strike out the answer was denied. The witness was further asked: ''Was it commensurate with reasonable skill to operate or to make an incision in that leg if it was raw from the blisters?'' and the witness was allowed over objection to answer: ''No; I wouldn't operate through a raw, infected surface.'' The court allowed the answer to stand. Subsequently the witness qualified his answer by stating that he would operate under such conditions ''only if there was some occasion of emergency that made it necessary to go through an infected surface.''

The transcript further discloses that plaintiff offered testimony of several witnesses in rebuttal to that of defendant and Dr. Ritter, but that the court refused

to allow them to testify, saying that he had determined to make a finding for plaintiff for the full amount of his claim, which was then entered, followed by the judgment in question.

The main contention of counsel for defendant is that the court's finding is so contrary to the weight of the evidence that a new trial should be awarded. We cannot agree with the contention. On the contrary we think that the finding is sustained by a clear preponderance of the evidence.

And we do not think that the finding and judgment are against the law. It is not disputed that plaintiff was a skilful physician and surgeon, having had much experience in the treatment of, and in the operating upon, fractured legs and limbs. In *Sims v. Parker,* 41 Ill. App. 284, an action for damages against a physician for claimed malpractice, it is said (p. 286): "Proof of a bad result or of a mishap is of itself no evidence of negligence or lack of skill. . . . Before a recovery could be had against him, it must be shown that his treatment was improper or negligent, not merely that he was mistaken, or that his treatment resulted injuriously to plaintiff. A physician or surgeon, or one who holds himself out as such, is only bound to exercise ordinary skill and care in the treatment of a given case, and in order to hold him liable, it must be shown that he failed to exercise such skill or care. (*McNevins v. Lowe,* 40 Ill. 209.)" These principles are applicable, we think, where one is defending an action by a physician or surgeon for his fees because of claimed negligence or malpractice. In the present case there is no evidence that plaintiff did not exercise ordinary skill and care in his treatment of, or in the operation upon, defendant's leg, and there is not sufficient evidence that plaintiff's said treatments were improper or negligent under the circumstances. The fact that the application of the iodine solution by

the interne and employee of the hospital caused blisters to appear is no evidence of negligence or malpractice on the part of plaintiff, especially as it appears that it was the usual practice and usage, in the hospital where defendant then was, for an interne to apply such a solution prior to a contemplated operation by a surgeon. Even if it could be said that the solution was too strong or was negligently applied by the interne (of which there was no evidence except that blisters appeared) plaintiff should not be held responsible for such negligence of the interne (if any there was) under the circumstances disclosed. (*Harris v. Fall,* 177 Fed. 79, 85; *Hunner v. Stevenson,* 122 Md. 40, 62; *Guell v. Tenney,* 262 Mass. 54, 55–6; *Olander v. Johnson,* 258 Ill. App. 89, 98.)

For the reasons indicated the judgment of the municipal court is affirmed.

*Affirmed.*

SCANLAN, P. J., and KERNER, J., concur.