Emma Shutan, Appellee, v. Jacob Bloomenthal and E. R. Bennecke, Trading as Bloomenthal and Bennecke, Appellants.

## Gen. No. 39,658.

Opinion filed June 29, 1938. Rehearing denied July 12, 1938.

Robertson, Crowe & Spence, of Chicago, for appellants; Eugene P. Kealy and Henry L. McIntyre, both of Chicago, of counsel.

John A. Bloomingston, of Chicago, for appellee.

Mr. Justice Hall delivered the opinion of the court. This is an appeal from a judgment against defendants for the sum of $2,500, entered in the superior

court of Cook county on February 3, 1937, after a jury trial.

Defendants are dentists and are engaged in the practice of their profession in Chicago, and it is charged that on March 24, 1934, they extracted, or attempted to extract, one of plaintiff's teeth, and as a result of the operation, broke plaintiff's jaw, causing an infection and improper occlusion of the jaw. Also, that they were negligent in failing to discover that the jaw was broken and in failing to properly treat plaintiff for the ailment which resulted in an infection and permanent injury.

On the day in question, plaintiff visited the office of the defendants in Chicago, and after gas had been administered to the plaintiff, the record indicates that E. R. Bennecke, one of the defendants, extracted an impacted tooth from plaintiff's jaw.

Plaintiff testified, in substance, that after the operation and after she had returned home, she had a terrific pain and immediately went to bed; that she tried to move her jaw, and that there was a grating or clicking between the bones of the jaw; that thereafter, upon the advice of Dr. Bennecke, she consulted a physician, who gave her a hypo to relieve the pain and induce sleep, and that the next day she called another physician, one Dr. Mary Shutan, a niece of the plaintiff. Plaintiff also testified to the effect that the day after the operation she noticed an inability to open her mouth, and that when she did so, there was a grating, that her jaw seemed to be clinched, and that her jaw started swelling; that the fourth day after the operation, Dr. Bloomenthal, one of the defendants, called upon plaintiff and administered a mouth wash, and that thereafter plaintiff was treated by a local physician, who prescribed sedatives; that the day after this visit to plaintiff by Dr. Bloomenthal, she called

at the office of the defendants, and that at that time, the jaw was very painful; that there was a decided grating or clicking if she attempted to open her mouth, and that her jaw continued to be in a swollen condition; that on the second day after plaintiff visited the office of the defendants, after experiencing some difficulty because of the fact that she could scarcely open her mouth, an X-ray was taken of her jaw, and that at that time the doctors mentioned that there was some sloughing of the bone; that thereafter at her home after waking from sleep, plaintiff found a piece of bone in her mouth, which she reported to defendants; that defendants continued to treat plaintiff for four weeks, and that during that time, they took three X-ray pictures, but that her jaw was constantly growing worse; that after about four weeks, she went to a Dr. Schaefer, whose testimony is hereafter mentioned, and also to a Dr. Nannestad, who also took an X-ray picture of her jaw. She testified that Dr. Nannestad was her family dentist. Her testimony is to the further effect that the Dr. Schaefer mentioned, examined the X-ray made by Dr. Nannestad, and that thereafter Dr. Schaefer operated upon her, after she had taken an anesthetic, and that after Dr. Schaefer's operation, she "improved very rapidly." She testified further to the effect that after the tooth had been extracted by Dr. Bennecke, she noticed a gradual paralysis of the chin from the middle of the chin over to the left side, and that that condition has remained with her to such an extent that every time she opens her mouth, there is a feeling of "drawing down in the corner," and that if she does not watch carefully, she drools out of the side of her mouth. She also stated that after the operation by Dr. Schaefer, the swelling subsided, but that she had difficulty in opening her mouth for some considerable period, and that at the time of

the trial, she was unable to chew on the left side, and that it was about three months after the operation before she could completely open her mouth; that her teeth "do not fit down," and that the center of her top teeth comes nowhere near the center of her bottom teeth, and that before the operation she had no such difficulty. On cross-examination, plaintiff testified that prior to the date of the extraction, she had a consultation with a Dr. Sommerfield, another dentist and that he advised her to have an X-ray taken, and that on the same day she had an X-ray taken at a laboratory near this dentist's office; that after exhibiting the X-ray to Dr. Sommerfield, she was told by him that she had an impacted molar, and that upon the advice of this dentist, she went to the defendants' office; that at the time of her consultation with Dr. Sommerfield, her jaw was sensitive; that upon her visit to the defendants, she was told by Dr. Bloomenthal that the tooth would have to be extracted, and that plaintiff stated that that was agreeable to her; that after the operation she was in great pain, and that she told the doctor about it; that in the night she called another doctor named Gethner, who gave her a hypo, and that she also consulted Dr. Mary Shutan, already referred to; that thereafter Dr. Bennecke called on the plaintiff again, and that she was informed by him that she would have to go to the defendants' office; that during this period she could open her mouth very little, and was compelled to subsist on liquid nourishment. She also testified that she returned to her employment the Wednesday after the tooth was extracted, the extraction having taken place on a Saturday; that she only worked for a short time during the first two weeks, but that at the end of two weeks, she went back to her regular work, and that she has been working steadily ever since; that the Dr. Schaefer

referred to, opened the jaw bone, scraped the bone and put in a packing, but that she still suffered a great deal of pain.

Dr. F. W. Nannestad referred to by plaintiff, and who took X-rays of plaintiff's jaw on May 8, 1934, testified that the X-ray taken denoted a fracture of the jaw, and also a triangular piece of loose bone, that the picture showed that the fracture extended all the way through the jaw bone, which, he said, was a "complete fracture," that the fracture was at one of the thinnest points of the jaw bone, and that the fracture is in the mandible. [Standard Dictionary defines mandible as the lower jaw bone.] He testified that the picture showed that the fracture that had severed the mandible was beginning to close, and that the bone is evidently formed in the triangular place where the piece of bone was removed, and that there is still some evidence of nonunion of the fracture.

While the testimony is not clear on the subject, we gather from this dentist's testimony that the X-ray picture about which he was testifying, was taken on March 19th or April, 1934. The witness was handed an X-ray picture taken in July or August, 1935, which he examined, and he then stated that "there was still a very, very slight evidence of the fracture, although it is practically . . . healed at this point," and that "a complete bony union has now taken place where the fracture was." He also testified that the bone had healed in such a manner that the teeth did not come together correctly, and we gather from his testimony, that in his opinion, this condition would remain.

Dr. E. R. Bennecke, one of the defendants, stated that subsequent to extracting plaintiff's tooth on March 24, 1934, he and his partners took a series of X-ray pictures of plaintiff's jaw, but that since then he had a fire in his office and that he has been unable

to find the X-rays; that he was shown an X-ray by plaintiff at the time she came to have her tooth extracted, and that at that time, the tooth was covered with tissue, and was blocked up against the tooth next to it, in other words, "it was impacted"; that in order to take the tooth out "we first dissected down to the tooth and then we chiselled around the tooth and then used elevators and ultimately lifted it out with a forceps"; that as far as the witness knew at that time, plaintiff's jaw was not broken. This witness testified to the effect that after the plaintiff had gone home, her son called up defendants' office, and that the witness told him that certain treatments should be applied, and that if they did not work, his mother should go to a doctor; that a day or two thereafter, defendant, Bloomenthal, called on plaintiff, and that the witness saw plaintiff four or five days after the tooth was extracted in his office; that he made no X-ray pictures at that time, but that two weeks later he took X-ray pictures, but that he did not then discover that plaintiff had a fracture of the jaw, and that he never did make any such discovery. The witness's attention was called to an X-ray picture which indicated a fracture of plaintiff's jaw, and he then testified that none of the pictures taken by him showed any such condition, but that the picture which he was examining showed a comminuted fracture of the jaw. He also testified that during a period of about a month when he was caring for the plaintiff, he never treated her for a fractured jaw, and that "it was not even necessary to immobilize her jaw because there was no displacement there," that she had very little swelling in the jaw, not more than would come from an ordinary extraction. He stated that swelling indicates infection, and that after the tooth was extracted, plaintiff had some difficulty in opening her mouth, and that in taking pictures of

her jaw they had some difficulty in getting the film into position; that plaintiff never complained of a sensation of grating of her jaw; that if she had made any such complaint, it would have suggested at once that there might be some crepitas, which would indicate a fractured bone. He also testified to the effect that after extracting an impacted wisdom tooth, the result is that the patient cannot open the mouth for a week or so thereafter, and that a fracture of the jaw is not unusual in the extraction of impacted molars, but that in his experience nothing of the sort had ever occurred to him; that the tooth extracted was the third molar, which is situated at the weakest part of the jaw, and that when the X-ray pictures were taken by him, they found a little crack in the jaw on a line where the tooth was extracted, but there was no appreciable separation of the bone. The defendant Bloomenthal's testimony is largely to the same effect as that of Dr. Bennecke.

A physician and surgeon named Remington testified on behalf of plaintiff and to the effect that he specialized in bone and joint surgery. He was shown an X-ray picture identified as that taken by Dr. Nannestad, and from this picture this witness gave the opinion that there was "a complete break of the mandible." Another X-ray picture was shown to this witness, who testified that "we find a well healed fracture, . . . shows the solidification of the bone, everything looks pretty good here, there is a healed fracture. The socket is filling up but not completely healed." This doctor was asked a number of hypothetical questions by counsel for plaintiff as to what, or what is not, the usual customary thing to do with a fractured jaw, all of which he answered, stating his opinion as to what should be done to a fractured jaw, but he nowhere suggests in his testimony that either of the

defendants had been negligent, or that any of the methods adopted by them in treating the plaintiff were to be censured.

Dr. Schaefer, who treated plaintiff after the tooth was extracted, testified on behalf of the defendants and to the effect that he did not find anything to indicate a fracture of the jaw. He testified to the further effect that the extraction of an impacted wisdom tooth under the conditions found, could have produced all of the symptoms and conditions for which he treated her. This witness also testified that because the soft tissues are injured in cases of extraction, infection frequently follows, for the reason that the mouth is full of bacteria, and that plaintiff's inability to open her jaws, and the pain attendant thereto, was not unusual. Another ''dental surgeon'' testified as a witness for defendants, but no witness for either the plaintiff or defendants suggested that in their opinion, defendants were guilty of the slightest negligence or malpractice in connection with the treatment of the plaintiff.

In *Bollenbach v. Bloomenthal,* 341 Ill. 539, a similar set of facts to those in the instant case, was presented. In that case, the defendants, dentists, extracted a tooth, which, from the statement of facts as set forth in the opinion, seems to have been in substantially the same condition as the tooth involved in the instant case. In the course of the operation, the crown of the tooth was fractured, and the defendant testified that he attempted to assemble the scattered portions of the tooth, but that he was unable to determine whether any of the fragments were missing, that at the time of the operation, the plaintiff was under an anesthetic, and that a mouth pack became dislodged, that at the time, he did not suspect, or have reason to suspect, that any portion of the tooth had

gone down plaintiff's throat, and that it was almost a year before he heard anything about it. Some months after the operation, plaintiff in that case coughed up a small piece of tooth and filling, which were introduced in evidence. After a trial by a jury in the superior court of Cook county, judgment was entered for the plaintiff, which, on appeal to this court, was affirmed. The cause was reviewed by the Supreme Court on a writ of error, and was there reversed and remanded, the court holding that upon the case made, the doctrine of *res ipsa loquitur* had no application, and that inasmuch as there was no evidence of negligence on the part of the defendants, the judgment could not stand.

In *Blodgett v. Nevius,* 189 Ill. App. 544 (Abst.), similar to the instant case, this court held that:

"The burden rested upon the plaintiff to show a want of care or skill in the treatment, and that the bad result that followed the treatment was the result of such want of care or skill. No presumption that the defendant was unskillful or negligent follows from the mere fact that the jaw was fractured and that the plaintiff was otherwise injured. As the plaintiff failed to introduce any evidence tending to prove that the fracture or the other injuries alleged was the result of unskillful or negligent treatment by the defendant, a *prima facie* case was not made out by the plaintiff, and the court should have instructed the jury to find for the defendant."

In *Theisen v. Nogard,* 183 Ill. App. 158 (Abst.) this court found in substance and the abstract of the opinion states that:

"In an action to recover damages for malpractice in dental surgery and for negligence in performing dental work, causing plaintiff to suffer from a splintered and broken jaw, evidence held insufficient to sus-

tain a recovery by plaintiff where it does not show malpractice or the employment of any method other than that usually employed by dentists.'' See also *Scully v. Hawkins,* 227 Ill. App. 610 (Abst.), and *Olander v. Johnson,* 258 Ill. App. 89.

At the close of plaintiff's case, and at the close of all of the evidence, the defendant moved the court to direct the jury to find the defendant not guilty, both of which motions were denied. Following the rule as laid down in the cited cases that in the absence of the testimony of experts skilled in the medical and surgery profession, to the effect that there was negligence and want of due care on the part of the defendants, there can be no recovery we are constrained to hold that the trial court was in error in failing to direct a verdict for the defendants. The judgment of the superior court of Cook county is, therefore, reversed and judgment is entered here against plaintiff for costs.

*Judgment reversed and judgment here against plaintiff for costs.*

HEBEL, P. J., and DENIS E. SULLIVAN, J., concur.