(No. 5022- )

WILLIAM F. PORTER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 29, 1965.*

FRANK E. TROBAUGH AND STEPHEN E. BRONDOS, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

PEZMAN, J.

Claimant, William F. Porter, seeks to recover the sum of $325.00 for the death of a Hereford cow, allegedly resulting from a test for "Bang's Disease" by a State veterinarian. Respondent contends that claimant has failed to establish the cause of death of the cow, and, further, that malpractice cannot be proven without expert testimony. The amended complaint of claimant invokes the doctrine of res ipsa loquitur as applicable to the facts and circumstances in this case, and seeks damages for the death of the cow in the above amount.

Claimant was cooperating with the plan for the eradication of bovine brucellosis, otherwise known as "Bang's Disease". Claimant's cow weighed around 1,200 pounds, and was five years old. On January 22, 1962, Dr. William Prusaczyk, a veterinarian employed by the State of Illinois, administered tests for brucellosis and tuberculosis to claimant's herd of cattle. In administering these tests he used a Silver King cattle chute, which was owned by the State of Illinois. The chute was known as a bleeding chute, and was approximately seven feet long, two and one-half feet wide, and six feet high. The cows or other animals to be tested were led into this chute, which had a horizontal bar that came down over the animal's neck holding it in place, and with a yoke at the bottom to keep the animal as rigid as possible during the test.

On the date in question, one of claimant's cows was led into the chute, and its head fastened in the head gate to enable the veterinarian to withdraw sample blood. At this time the veterinarian, Dr. William Prusaczyk, noticed the air intake of the cow was restricted, and both he and claimant testified that the tongue of the cow was protruding

from its mouth. The veterinarian testified that he immediately released the cow to relieve the pressure, but the cow collapsed in the chute, and, when she went down, it looked to him like there was a considerable amount of pressure. He further testified that the cow started to recover with normal breathing, displayed bright eyes, and 'that he let her stay at the bottom of the chute for about five minutes. When they tried to get the cow up, she collapsed and died within a minute or two. Ten minutes elapsed from the time the cow entered the chute until the time it died. The veterinarian testified that, from the time the cow was driven into the chute, it was entirely under his control, and Mr. Porter, the claimant, had nothing to do with it. The veterinarian admitted the breathing of the cow was temporarily restricted, and he further testified that he noticed the cow had difficulty breathing when he withdrew the sample of blood, but could not remember whether the cow collapsed before he released it. Dr. Prusaczyk testified that in his opinion the cow did not suffocate. He stated that, in pneumonia or in a starvation of the lungs of an animal, it is customary for the tongue to protrude. He testified that the cow's tongue was not out when she died, but she was gasping for air, and her breathing was labored just before she died.

Claimant contends that, the facts and circumstances show the death of the cow would not have happened in the ordinary course of events, had the veterinarian used ordinary care. Claimant states that the veterinarian had exclusive control of the cow, the chute, and the bar with which he positioned the cow's head in the head gate, and that he supervised the entire operation on behalf of respondent, and that it was this operation, which resulted in the cow's death. Claimant testified that it was a perfectly healthy cow prior to the tests for "Bang's Disease". He contends

that the doctrine of res ipsa loquitur applies in this case, and that respondent is liable for the malpractice of its veterinarian. In behalf of these contentions, claimant cites *Mertel* vs. *State of Illinois*, 20 C.C.R. 285 at 287, and *Carter* vs. *State of Illinois*, 20 C.C.R. 213. The Mertel case attempts to define or explain res ipsa loquitur, but the facts are not at all consistent or even similar to those in the case at hand, so as to permit a fair comparison of the application of the doctrine. In the Carter case, claimant seeks to recover for the malpractice of a veterinarian employed by respondent to test claimant's herd of cattle for Bovine Infectious Abortion, commonly known as "Bovine Brucellosis" or "Bang's Disease". In that case, claimant produced an expert witness, Dr. G. J. Krueger, who was also a veterinarian for respondent, and who testified at the hearing, without objection, that the death of the cow was due to a malignant edema, which resulted from the insertion of the blood needle without the taking of the proper sanitary precautions by Dr. Ruck, respondent's veterinarian, and the Court held on behalf of claimant.

In *O'Neil* vs. *State of Illinois*, 21 C.C.R. 532, the Court of Claims held that the doctrine of res ipsa loquitur applies in medical malpractice cases only where a layman is able to see, as a matter of common knowledge and observation, or from the evidence can draw an inference, that the consequences of professional treatment were not such, as would have ordinarily followed, had due care been exercised. The Court in the O'Neil case stated:

"Res ipsa loquitur is a form of circumstantial evidence creating an inference of negligence, which may be utilized by claimant in establishing a prima facie case. As stated by the Supreme Court of Illinois in *Chicago Union Traction Co.* vs. *Giese*, 229 Ill. 260, 'the circumstances surrounding a case, where the maxim, res ipsa loquitur, applies, amount to evidence from which the fact of negligence may be found.'

"In order for such doctrine to be available to a claimant, it is well established generally, and in Illinois specifically, that the injury must have

been caused by a thing in the exclusive control or management of the defendant, and, further, that the accident must be such as in the ordinary course of events will not happen, if those who have such control and management use proper care."

The Supreme Court of the State of Illinois in *Chicago and Eastern Illinois Railroad Company* vs. *Reilly*, 212 Ill. 506 stated:

"The condition can be accounted for as readily on the hypothesis of pure accident and absence of negligence as upon the ground of negligence, and the rule is well settled that negligence cannot be presumed, where nothing is done out of the usual course of business, unless that course of business itself is improper."

Generally speaking, it is the law in Illinois, and generally throughout the country, that in a malpractice action the doctrine of res ipsa loquitur is not applicable, but the plaintiff, in order to recover, must offer affirmative evidence, and, as a general rule, expert testimony to show that the bad result or injury was caused by an alleged unskillful or negligent act. *Olander* vs. *Johnson*, 258 Ill. App. 89.

In the cause at hand, the proper test to determine whether the doctrine applies would be as follows: Do the facts and circumstances show that the alleged injury to claimant's cow would not have happened in the ordinary course of events had the Defendant used ordinary care in conducting the test for "Bovine Brucellosis?" And, more specifically, was the treatment of such a nature that the only reasonable inference to be drawn from the occurrence of injury is that the treatment was improperly and negligently conducted? There is no testimony as to the specific cause of death of the animal, nor is there expert testimony as to the apparent malpractice on the part of the State veterinarian. Claimant admitted that he took control of the dead animal, and disposed of the carcass without causing a post-mortem to be held to determine the cause of death.

Claimant has failed to prove the necessary elements under the doctrine of res ipsa loquitur to establish medical

malpractice on the part of Dr. Prusaczyk, the State veterinarian. The precedent was set by this Court, and cited hereinabove.

Claim for an award is denied.