MARGARET FORSBERG, Plaintiff-Appellant, v. EDWARD HOSPITAL AND HEALTH SERVICES, Defendant (David J. Piazza, Defendant-Appellee).

Second District    No. 2—08—0243

Opinion filed April 8, 2009.

Scott G. Pyles, Sameer B. Pandya, and Meghan E. Preston, all of Rathbun, Cservenyak & Kozol, LLC, of Joliet, for appellant.

Thomas R. Hill, Rosa M. Tumialan, and Michelle B. Fisher, all of Dykema Gossett PLLC, of Chicago, for appellee.

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, Margaret Forsberg, sued defendants, Edward Hospital and Health Services (Edward Hospital) and David J. Piazza, M.D. (defendant), for medical malpractice. The basis of plaintiff's claim was that, after an operation that defendant performed, a sponge was left inside a surgical wound. After plaintiff settled with Edward Hospital, the trial court granted defendant summary judgment (see 735 ILCS 5/2—1005(c) (West 2006)) and denied plaintiff's motion to reconsider. Plaintiff appeals. We affirm.

Plaintiff's complaint alleged that, on June 4, 2004, plaintiff underwent a lumpectomy on her left breast. Defendant performed the operation, and Edward Hospital provided the operating room services, personnel, and supplies. During the operation, a surgical sponge was inserted into the surgical wound. The complaint asserted that Edward Hospital's agents were negligent for (1) failing to perform a proper sponge count before or after the operation; (2) failing to be aware of the sponges that defendant was using during the operation; (3) failing to inform defendant of the missing sponge or the inaccuracy of the sponge counts; and (4) failing to use certain devices to detect sponges. The complaint also alleged that defendant was negligent for (1) failing to account for the sponges that he used in the operation; (2) not properly directing operating room personnel to remove sponges before closing the surgical wound; (3) not properly observing the surgical field for the presence of sponges; (4) failing to inquire before closure whether the sponge counts were correct; and (5) not properly using certain devices to detect sponges. According to the complaint, as a result of the alleged negligence, a sponge was left inside plaintiff's surgical wound, causing it to heal improperly, which in turn required more surgical care. The complaint did not attach a physician's report stating that the action had a meritorious basis (see 735 ILCS 5/2—622(a)(1) (West 2006)).

Defendant moved for summary judgment, arguing as follows. Ordinarily, to prevail in a medical malpractice suit, a plaintiff must introduce expert medical opinion. However, no expert had provided any evidence that defendant had breached the standard of care. A defendant may submit his own expert opinion, and defendant's deposition, which included his opinion, established that he had acted with due care, because the circulating nurse was responsible for all sponge counts before and after the operation. Also, defendant could not be liable under the "captain of the ship theory," which had been limited by *Foster v. Englewood Hospital Ass'n*, 19 Ill. App. 3d 1055 (1974).

In his deposition, taken September 6, 2007, defendant testified as follows. In performing the lumpectomy, he made two incisions: one

near the armpit (axillary incision) and one into the breast. During the surgery, sponges were used, and a nurse kept track of them. At some point near the end of the procedure, the nurse told defendant that all of the sponges had been collected, and he began to close. At that time, he had no indication that any sponges were uncollected.

Defendant testified that, after the operation, he saw plaintiff on several follow-up visits. On July 27, 2004, he concluded that the axillary incision wound was not improving. He scheduled July 30, 2004, for an excision of what he believed was a fistula (a connection of a lymph channel to the skin). On July 27, 2004, he had no idea that a foreign object was still inside the axillary incision area. While operating on July 30, 2004, defendant discovered the sponge there and removed it.

Defendant explained that even a simple operation may require 20 or 30 sponges. The sponge involved here was four-by-four inches or smaller. Sometimes, a sponge absorbs fluids and becomes "camouflaged" within the wound, and it may also get "wadded up, very small."

Defendant identified a document as the circulating nurse's notes of the lumpectomy. The document included sponge counts. The nurse was not his employee. Defendant explained that a circulating nurse "is responsible for the patient from the preop holding area all the way through the operating room to the recovery room." Asked how personnel keep track of the sponges used in an operation, he testified as follows. After nurses open a packet of sponges, they count them. As each sponge is used in the operation and then removed, the "scrub nurse" collects it. The circulating nurse receives the used sponges and keeps counts of the sponges that were delivered and those that were received back. The delivery count is verified by both the scrub nurse and the circulating nurse, and the circulating nurse is responsible for ensuring that all sponges have been collected. The sponge count "at the end of the case *** is conducted by the circulating nurse and the scrub tech with the circulating nurse being responsible for that count." A final sponge count is always performed before the surgeon leaves the room. Because defendant's practice was never to leave the room until he was sure that the circulating nurse had told him that the sponge count was correct, he assumed that there had been no miscommunication in that regard on June 4, 2004. Defendant opined that he had complied with the standard of care.

Edward Hospital settled with plaintiff and was dismissed. Plaintiff responded to defendant's summary judgment motion, noting that she had now filed a section 2—622 physician's report. The one-page report was dated September 26, 2008. In the report, Dr. Michael Drew, a

general surgeon, stated that, according to the records of plaintiff's care, a sponge was left in her surgical wound. "[I]n all medical probability," the sponge had been used in the original procedure. Dr. Drew opined that leaving the sponge in the wound was "error on the part of the members of the surgical team, including [defendant] and the nursing staff present in the operating suite" and breached the standard of care.

In arguments, plaintiff contended that she did not need expert testimony to prove negligence, as it was common knowledge that leaving a sponge inside a surgical patient's body is a breach of the standard of care. She argued further that, even if a nurse had been the only negligent actor, defendant was vicariously liable under *Foster* because the nurse was subject to his control and supervision. Defendant responded that the section 2—622 report could not be used to defeat summary judgment; that the "common knowledge" doctrine did not apply; that the "captain of the ship" doctrine noted in *Foster* is not the law in Illinois; and that the nurses who performed the sponge counts did not do so under his direct control. Plaintiff replied that the "physician affidavit" was evidence that defendant had breached the standard of care. The following colloquy ensued:

"THE COURT: However, that report was not an affidavit.

MR. PANDYA [plaintiff's attorney]: My apologizes [*sic*].

THE COURT: Do you have anything that shows it was an affidavit, because I looked at the original image.

MR. PANDYA: I do not.

THE COURT: And it's not an affidavit. It is merely a report. Even though it says [']upon first being duly sworn['], there's no notary on there.

MR. PANDYA: My apologizes [*sic*], then. I misspoke. There is a report, though *** from a practitioner that did review the file."

Later, the judge asked Pandya whether he had an affidavit from a physician stating that defendant had breached the standard of care. Pandya responded that plaintiff was relying in part on Dr. Drew's report. The judge asked, "You truly think there's case law that says you can attach a report that's not an affidavit in support of your objection to the motion for summary judgment?" Pandya replied, "No, your Honor." He agreed that, in the judge's words, plaintiff was arguing that the case involved "a matter of common knowledge and [plaintiff did] not need to have a supporting affidavit by a physician [to avoid] summary judgment."

The trial court granted defendant summary judgment and denied plaintiff's motion to reconsider. On appeal, she argues that (1) in ruling on defendant's summary judgment motion, the trial court should

have considered Dr. Drew's section 2—622 report; (2) the "common knowledge" doctrine applies here, and, therefore, she did not need any expert opinion; and (3) the "captain of the ship" doctrine applies, creating a genuine issue of whether defendant is liable for the nursing crew's negligence. We disagree with all three contentions.

A grant of summary judgment is reviewed *de novo. People ex rel. Director of Corrections v. Booth*, 215 Ill. 2d 416, 423 (2005). Summary judgment should be granted when the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2006); *People ex rel. Madigan v. Lincoln, Ltd.*, 383 Ill. App. 3d 198, 204 (2008).

■ We first consider plaintiff's contention that, in ruling on defendant's summary judgment motion, the trial court had to consider Dr. Drew's section 2—622 report as part of the "pleadings, depositions, *** admissions on file, [and] affidavits" (735 ILCS 5/2—1005(c) (West 2006)) before the court.

Defendant contends that plaintiff has waived the issue because, at the trial level, she conceded that the section 2—622 report could not be considered. We agree with defendant that, in the quoted interchange with the trial judge, plaintiff's attorney conceded that the report could not be used to oppose summary judgment. Nonetheless, we may disregard waiver in the interest of ensuring a just result or maintaining a uniform body of precedent. *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 623 (2007). Here, we need not accept plaintiff's attorney's understanding of the law. Defendant will suffer no unfair prejudice if we address the issue on the merits, and, by doing so, we hope to clarify the evidentiary status of section 2—622 reports in general.

Plaintiff's attempt to use Dr. Drew's section 2—622 report encounters a fundamental difficulty: the report, although properly attached to the complaint, does not meet the standards for affidavits in summary judgment proceedings. Under Supreme Court Rule 191(a), as pertinent here:

"Affidavits in support of and in opposition to a motion for summary judgment under section 2—1005 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." 210 Ill. 2d R. 191(a).

The trial judge appears to have concluded that, because the report was not notarized, it was not an affidavit at all. This reasoning was erroneous. Although an affidavit must be sworn (*Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 493-94 (2002); *Mugavero v. Kenzler*, 317 Ill. App. 3d 162, 165 (2000)), *Robidoux v. Oliphant*, 201 Ill. 2d 324, 343 (2002), held that Rule 191(a) does not require an affidavit to be notarized. In *Robidoux*, a medical malpractice case, the plaintiff's response to the defendants' motions for summary judgment included a physician's affidavit that began, " 'The undersigned, being first duly sworn under oath, deposes and states as follows.' " *Robidoux*, 201 Ill. 2d at 329. Here, the report began, "I, Michael Drew, being first duly sworn and under oath, if called to testify could competently attest to the following facts and circumstances." We do not regard the difference in wording as material. (As we note, however, *Robidoux* held that the affidavit there was improper on another ground.) Nonetheless, we review the trial court's judgment, not its reasoning, and we may affirm on any basis called for by the record. *City of Chicago v. Holland*, 206 Ill. 2d 480, 491-92 (2003). Even if the section 2—622 report qualified as an affidavit under Rule 191(a), it did not meet all the requirements of the rule. The report referred to the medical records that Dr. Drew reviewed, but did not attach any of those records, or any other papers, upon which he relied. This deficiency rendered the report inadmissible in opposition to defendant's motion for summary judgment. See *Robidoux*, 201 Ill. 2d at 339 (failure to attach papers to affidavit violated Rule 191(a)).

Although we agree with defendant that the section 2—622 report was not properly before the trial court, we disagree with his assertion that this result is required by *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 117 (2004), *DeLuna v. St. Elizabeth's Hospital*, 147 Ill. 2d 57 (1992), or *McAlister v. Schick*, 147 Ill. 2d 84 (1992). These opinions did not squarely address when, if ever, a section 2—622 report may be used as evidence to oppose a motion for summary judgment. *Sullivan* held that, although a physician may supply a section 2—622 report to support a complaint for nursing malpractice, that does not change the rule that a physician who lacks a nurse's license may not testify at trial as an expert on the standard of care for the nursing profession. *Sullivan*, 209 Ill. 2d at 116. The court explained that a section 2—622 report is "only a threshold opinion" and that section 2—622 "has no bearing on the type of evidence relied upon at trial." *Sullivan*, 209 Ill. 2d at 117. For support, the court cited *McAlister*'s statement that a section 2—622 report is "only 'an advisory opinion.' " *Sullivan*, 209 Ill. 2d at 117, quoting *McAlister*, 147 Ill. 2d at 93. However, *McAlister* made this statement in the context of holding that section 2—622 does

not violate the separation of powers, because requiring a mere "advisory opinion" to be attached to a medical malpractice complaint does not delegate any judicial power to people outside the judiciary. *McAlister*, 147 Ill. 2d at 93. *DeLuna* addressed the same issue and reached the same conclusion. *DeLuna*, 147 Ill. 2d at 69. Thus, the cases that defendant cites do not stand for the sweeping proposition that a section 2—622 report may never be admissible evidence in opposition to a motion for summary judgment. We decline to make such a blanket holding here. We hold only that, for the reasons given, Dr. Drew's report was not properly before the trial court on the motion for summary judgment.

In contending otherwise, plaintiff cites—with little elaboration or analysis—*Willis v. Khatkhate*, 373 Ill. App. 3d 495 (2007), and *Schroeder v. Northwest Community Hospital*, 371 Ill. App. 3d 584 (2006). Neither case is on point. In *Willis*, a case with multiple defendants and multiple claims, the only mention of the section 2—622 report comes in the discussion of whether the trial court correctly *dismissed*, under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2006)), a claim that—according to a defendant doctor—was barred by statutory tort immunity. *Willis*, 373 Ill. App. 3d at 506. The section 2—622 report was pertinent to deciding whether the complaint alleged conduct that was within the tort immunity statute. The court's analysis has nothing to say about the admissibility of a section 2—622 report as evidence to oppose summary judgment.

In *Schroeder*, the plaintiff appealed the grant of summary judgment to a hospital in a case in which the plaintiff also sued several physicians and nurses. The appellate court reversed and remanded. The court did not address, much less decide, whether the section 2—622 report was admissible as evidence in opposition to the motion for summary judgment. Instead, the court discussed the report in the context of deciding whether the complaint sufficiently raised a claim that the hospital was vicariously liable for the nurses' alleged negligence. *Schroeder*, 371 Ill. App. 3d at 594. The court held that the complaint, including the section 2—622 report, did place the hospital on notice that the plaintiff was claiming nursing negligence and thus vicarious liability. *Schroeder*, 371 Ill. App. 3d at 595-96. That holding has no bearing on this case.

We do not disagree with plaintiff that Dr. Drew's report, although not sufficient as an affidavit, was properly incorporated into her complaint. However, a party may not rely solely on her complaint to oppose a supported motion for summary judgment. *Laurence v. Flashner Medical Partnership*, 206 Ill. App. 3d 777, 784 (1990). If a party moving for summary judgment supplies facts that, if left uncontra-

dicted, would entitle him to judgment, the opposing party may not rely on her pleadings alone to raise issues of material fact. *Safeway Insurance Co. v. Hister*, 304 Ill. App. 3d 687, 691 (1999). The section 2—622 report is thus unavailing as evidence opposing defendant's summary judgment motion.

For the above reasons, we conclude that the trial court did not err in excluding Dr. Drew's report from the evidence it considered in ruling on defendant's motion for summary judgment. We consider next whether, based on the evidence properly presented, the "common knowledge" doctrine applies here, such that, even without any expert opinion to support her claim, plaintiff raised a genuine factual issue of whether defendant breached the standard of care.

■ Ordinarily, the plaintiff in a medical malpractice action must introduce expert testimony to prove the standard of care and that the defendant breached it. *Walski v. Tiesenga*, 72 Ill. 2d 249, 256 (1978). However, expert testimony is not required to establish the standard of care "where the common knowledge of laymen is sufficient to recognize or infer negligence." *Walski*, 72 Ill. 2d at 257.

Plaintiff is correct that the "common knowledge" exception has been applied to the act of leaving a sponge inside a surgical patient. Most recently, in *Willaby v. Bendersky*, 383 Ill. App. 3d 853 (2008), the plaintiff filed a malpractice action against a hospital and two doctors after an operation in which a sponge was left inside her abdomen. The claim against the hospital was based on its nurses' failure to keep an accurate sponge count. The trial court directed a verdict for the hospital. The appellate court reversed, holding that, even without expert testimony on the standard of care applicable to the nurses, the fact that the sponge was left in the plaintiff's body established a *prima facie* case of medical negligence and the burden shifted to the hospital to explain the nurses' failure to keep an accurate sponge count. *Willaby*, 383 Ill. App. 3d at 866.

*Willaby* relied in part on *Comte v. O'Neil*, 125 Ill. App. 2d 450, 454 (1970), which held that the "common knowledge" exception did not apply there and contrasted the facts of that case to "a sponge in the abdomen *** which bespeak[s] to the man in the street some carelessness on the part of *somebody*." (Emphasis added.) The quoted language does not imply that negligence can automatically be imputed to the surgeon, as opposed to nurses or other parties. However, other cases do so apply the "common knowledge" exception. Nonetheless, they also hold that the inference that the surgeon was negligent is rebuttable. Thus, as we shall explain, the law does not require us to hold that, here, plaintiff raised a genuine issue of whether defendant breached the standard of care.

In *Piacentini v. Bonnefil*, 69 Ill. App. 2d 433 (1966), a minor, by her mother, brought a malpractice action against a surgeon, alleging in part that he was negligent for allowing a surgical sponge to remain in her body after an appendectomy and also during and after a follow-up operation. At the close of the plaintiff's evidence, the trial court directed a verdict for the surgeon. However, the appellate court reversed the judgment and remanded the cause for a new trial. The court noted that there was evidence from which a jury could infer that the sponge was inserted into the plaintiff's body during the follow-up operation. The court continued, "If a sponge was left in the plaintiff's body she has established a prima facie case of negligence against the doctor and the burden of coming forth with the evidence then shifts to the defendant doctor. *Hall v. Grosvenor*, 267 Ill. App. 119 [(1932)]." *Piacentini*, 69 Ill. App. 2d at 447. Thus, the court in *Piacentini* held that the fact that a sponge was left inside a patient established a *prima facie* case of malpractice, but it did not hold that the fact was irrebuttable proof of a doctor's negligence.[1]

In *Hall*, the case upon which *Piacentini* relied, the plaintiff appealed a directed verdict for the defendant, a surgeon who had left a sponge in her body after an operation. The court stated that "the failure to remove the sponge, standing alone and unexplained, [was] prima facie evidence of negligence." *Hall*, 267 Ill. App. at 121. No expert testimony was needed to prove that this lapse was "improper." *Hall*, 267 Ill. App. at 122. Thus, the court held only that the failure to remove the sponge was *prima facie* evidence that the doctor had been negligent. The court recognized that the doctor might be able to avoid liability by showing that the mistake was not caused by carelessness on his part. In doing so, the court relied on *Olander v. Johnson*, 258 Ill. App. 89 (1930). *Hall*, 267 Ill. App. at 122-23.

In *Olander*, the plaintiff sued a doctor for leaving a sponge in her body. The jury found for the plaintiff, but the appellate court reversed. The court noted that, during the operation, the doctor had been assisted by several nurses, none of whom were in his direct employ. One nurse brought the sponges into the operating room, counted them, and handed them to the doctor. As the sponges were used, the defendant threw them into a receptacle, and another nurse put them into piles. When the operation was finished, but before the incision was closed, the unused sponges were counted by one nurse and the

---

[1]The hospital at which the operations occurred was also named as a defendant in *Piacentini*, but the plaintiff's attorney stipulated at trial that the hospital was not charged with any negligence related to the follow-up operation. *Piacentini*, 69 Ill. App. 2d at 446.

used sponges were counted by another nurse. The total count was compared with the number of sponges brought into the operating room, and the nurse in charge announced whether the count was correct. The doctor relied on this procedure and on the nurses' assurances that the sponge counts matched up. *Olander*, 258 Ill. App. at 92-94.

In reversing the judgment for the plaintiff, the appellate court explained that "[t]he leaving of a sponge by a physician in a patient is not negligence *per se*." *Olander*, 258 Ill. App. at 96. One or more nurses involved in the sponge count had made a mistake (*Olander*, 258 Ill. App. at 97), and, under the circumstances, the doctor was not liable. Specifically, (1) he was not vicariously liable, because the nurses were not his employees (*Olander*, 258 Ill. App. at 98); and (2) he was not directly liable, because he had exercised due caution: in accordance with the hospital's rules, he had reasonably relied on the nursing staff, including the chief nurse's assurance that the sponge count was correct (*Olander*, 258 Ill. App. at 99).

■ Defendant contends that *Olander* is on point, and we agree. Here, the undisputed facts that defendant provided in his deposition were that he reasonably relied on the standard sponge-count procedure, including the assurance of the circulating nurse and the scrub nurse that the final sponge count was correct. Thus, any inference of negligence based on the bare fact that a sponge was left inside plaintiff's surgical wound was negated by unrefuted evidence. We note that, although *Olander* was decided before 1935 and is thus not itself binding precedent (see *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 95 (1996)), its holding and reasoning were adopted not only in *Piacentini* but also in *Foster*. Therefore, our holding that the "common knowledge" doctrine does not apply here is based on precedent.

■ *Foster* also disposes of plaintiff's final contention: that, even if defendant was not himself negligent, he was necessarily liable for the negligence of the nursing staff. We hold that, on this evidence, the "captain of the ship" doctrine does not create a genuine issue of material fact.

In *Foster*, the plaintiff brought a wrongful death action against a hospital, a nurse, and the co-executors of the estate of the doctor who operated on the plaintiff's decedent. The evidence showed that the decedent died because the nurse failed to anesthetize him properly. The trial court entered judgments, based on jury verdicts, against the hospital and the nurse, but granted a judgment *n.o.v.* for the doctor's estate. *Foster*, 19 Ill. App. 3d at 1057.

In reviewing the judgment *n.o.v.* for the doctor's estate, the appellate court framed the issue as the "standard of conduct *** to be

imposed on a surgeon when the negligent act that directly caused the injury was committed by a person employed by the hospital." *Foster*, 19 Ill. App. 3d at 1059. The court recognized that, under the "captain of [the] ship" doctrine, adopted in 20 other jurisdictions, a surgeon may be held liable for the negligence of an assisting nurse not in his employ if the negligent acts are done while the nurse is under the surgeon's direct control or supervision. *Foster*, 19 Ill. App. 3d at 1059. However, following *Olander*, the court rejected either "a rule making a surgeon liable for every negligent act of every hospital employee under his control" or "a rule exculpating him for every negligent act of persons under his control." *Foster*, 19 Ill. App. 3d at 1063. Instead, the court held that, "if a surgeon retains supervision or control over other persons participating in an operation, he should be required to exercise that control with reasonable care." *Foster*, 19 Ill. App. 3d at 1061.

The import of *Foster* here is plain. If defendant is not liable for his own negligence, then he is not vicariously liable for the nursing staff's negligence. Instead of extending vicarious liability via the "captain of the ship" doctrine, *Foster* held that a surgeon may not be held liable for the nursing staff's negligence without proof that the surgeon was independently negligent in relying on the nursing staff. In *Foster*, this rule did not prevent recovery, as there was sufficient evidence to find that the doctor failed to supervise the nurse with reasonable care. *Foster*, 19 Ill. App. 3d at 1065. Here, by contrast, as in *Olander*, the evidence provides no basis to find such negligence. Therefore, we reject plaintiff's final contention of error.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

ZENOFF, P.J., and BOWMAN, J., concur.